Julian G. Coleman, et al., Plaintiffs-Appellees, v. Myrtle S. Toohey, d/b/a Toohey-Ryan Builders, Defendant-Appellant.

Gen. No. 49,258.

First District, Fourth Division.

April 22, 1964.

Rehearing denied May 13, 1964.

Raskin and Downing, of Chicago (Robert J. Downing and Robert G. Lussier, of counsel), for appellant.

McCoy, Ming & Leighton, of Chicago (Ellis E. Reid, of counsel), for appellees.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

Appeal has been taken by defendant from a decree in chancery entered after ex parte hearings, and from denial of her petition to vacate the decree.

Plaintiffs' complaint was filed August 30, 1961 alleging that defendant had purchased some real estate as plaintiffs' agent, with plaintiffs' money, for the benefit of plaintiffs, but had misappropriated a part of the real estate to her own use. Other charges were also made relating to construction contracts between the parties. Depositions were taken and on November 16, 1961 defendant filed her answer together with a counterclaim seeking money damages under the basic contracts, and plaintiffs filed answers to the counterclaim. About a month later plaintiffs filed an amended complaint, and on February 28, 1962, after plaintiffs had made a motion for default, defendant answered the amended complaint.

On September 12, 1962 plaintiffs moved the court to set the case for hearing and trial was set for November 29, 1962. Thus, regardless of the period of more than a year during which the suit had been pending, the parties received, in effect, more than 2½ months' notice by the court to be ready for trial on November 29. Only three weeks prior to that date defendant's firm of attorneys asked the court for leave to withdraw on the ground that, despite repeated requests, defendant had failed to pay their bill for services and expenses in the amount of $1,043, and had, in fact, made no contact with her attorneys, in that regard. The court granted leave to withdraw on November 7, the trial date, however, remaining fixed for November 29.

On the latter date plaintiffs appeared with witnesses ready for trial, when a second law firm filed its appearance on behalf of defendant and requested a continuance. Over the objection of plaintiffs this request was granted to January 3, 1963, but the court included in its draft order that "this date is final." The chancellor also continued to the trial date a motion of plaintiffs to tax as costs their expense for witnesses who had appeared on November 29.

Two weeks later, on motion of defendant's second set of attorneys, they, too, were given leave to withdraw. From the date of this order, however, there still remained three weeks to the date set for trial within which defendant had an opportunity to obtain other counsel and otherwise prepare to meet the court's schedule.

On January 3, 1963 neither defendant nor any attorney on her behalf appeared in court, but plaintiffs were again on hand and ready to proceed with their evidence. While there has been no report of proceedings filed in this court, it appears from defendant's petition to vacate the decree that on January 3 defendant's daughter was present in court and stated to the chancellor that her mother was ill and on that account requested another continuance. She also advised the court that "defendant was attempting to obtain money to retain and pay counsel."

Defendant's request for continuance was denied and at about 3 p. m. of January 3 the court proceeded with the hearing of plaintiffs' testimony ex parte. At 5:30 p. m., the trial not having been concluded, instead of recessing until the following morning, the cause was continued for further hearing until January 29, again giving defendant an opportunity, during the ensuing 26 days, to make necessary arrangements for defense of the suit.

The record is silent as to what then occurred until January 28 when defendant called on her original firm of attorneys and paid up its outstanding bill for services and expenses. In court the following day these attorneys informed the court that they were prepared to file their appearance again (the reason for withdrawal having now been obviated) but only on the condition that further hearing be continued until sometime after February 15, and this because of prior commitments to other clients. The court giving no indication that such further continuance would be granted, the attorneys did not file their appearance, and, in consequence, were in no position to ask for, nor did they seek a continuance on the ground of engagement of counsel. (Circuit Court Rules, § 6.1.)

Neither defendant nor any of her counsel being present, the hearing of evidence proceeded ex parte and was concluded on that day, January 29. On February 11, 1963 the decree was entered. We shall not describe the decree except to state that it is lengthy and detailed, with 35 paragraphs of findings of fact and seven paragraphs in the ordering part, including a direction on defendant to deed to plaintiffs the real estate in question. The decree did not expressly pass upon the counterclaim, but the findings in relation to the complaint were such that they necessarily disposed of the issues raised in the counterclaim adverse to defendant's claim.

Twenty-eight days later defendant's original attorneys again filed their appearance for defendant, together with a petition to vacate the decree. The substance of this petition has already been set forth in our outline of the facts,* it being then urged as the

---

* In regard to defendant's failure to pay her original attorneys (the fact which led to their withdrawal of November 7, 1962) it further appears from defendant's affidavit filed in support of the petition that she "worked at the Water Tower Inn, Chicago,

basis for vacating the decree that defendant had been denied equity by the refusal of the court to grant her requests for further continuances. The petition itself was denied on April 18, 1963 and this appeal followed.

The merits of the basic litigation are not before us, the sole question being whether or not the chancellor committed reversible error in not granting a further continuance to defendant when the case was called for trial on January 3 and/or at the continuation of the trial on January 29.

Supreme Court Rule 14(6) provides that "[n]o motion for the continuance of a cause made after the cause has been reached for trial shall be heard, unless a sufficient excuse is shown for the delay."

It is conceded that the determination of "a sufficient excuse" must be made by the court in the exercise of its sound discretion. The parties here both start from that premise, and, arguing primarily from the same authorities (e. g., Widucus v. Southwestern Elec. Cooperative, 26 Ill App2d 102, 167 NE2d 799), reach opposite conclusions; defendant contending that the chancellor abused that discretion and plaintiffs urging that she did not. We agree with plaintiffs.

The reviewing court in Widucus reversed the judgment which had been entered against the defendant in that case, but on facts vastly different from those in the case at bar. There the case was not "reached for trial" as it was here, but default and judgment were entered within a few days after defendant's failure to appear and file answer, without any notice to defendant, and without any breakoff in the settlement negotiations which had been carried on for a long

---

Illinois, for the period March 12, 1962, through August 28, 1962, and for a period of time, also held a second job at the Carriage House, Chicago, Illinois, during the period of July 7, 1962 to January 20, 1963 and also during said period, worked part-time at the Knickerbocker Hotel, Chicago, Illinois."

period of time. The court stated in the Widucus opinion (page 109):

> Justice will not be done if hurried defaults are allowed any more than if continuing delays are permitted. But justice might, at times, require a default or a delay. What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome.

A closer case on the facts, and one which reached the opposite conclusion, is Miller v. Paoli, 39 Ill App2d 367, 188 NE2d 730. See also Ferraro v. Augustine, 45 Ill App2d 295, 304, 196 NE2d 16. Numerous other cases could be cited without their being of any real aid in determining the issue before us since the principle involved is not controverted, but only its application to the facts in the case at bar.

From the findings in the decree it appears that defendant contracted to build two houses for plaintiffs but ceased all work on the buildings prior to their completion. It further appears that plaintiffs had undertaken to complete the work themselves, and that questions were pending in regard to unreleased subcontractors' liens and pay-outs under construction mortgages. Whether because of this situation, or because of the other factors in the case, as described in this opinion, the chancellor decided that plaintiffs were entitled to proceed without further delays. We cannot say that this determination by the court constituted abuse of its discretion. Absent such abuse, we will not intervene in the trial court's discretionary control over trial delays. This principle has long been the law in Illinois, and its importance has not been lessened through the years, but rather magnified as the trial courts have come to face dockets of overwhelming proportions. Brewer v. National Union

Building Ass'n, 166 Ill 221, 228, 46 NE 752; Dunivant v. Dunivant, 5 Ill App2d 481, 125 NE2d 836; Reed v. H. Roberts, Inc., 46 Ill App2d 363, 197 NE2d 134. There must be a limit beyond which the court should not go in catering to the convenience of either litigant or counsel. We believe that line to have been properly drawn in this case.

Affirmed.

DRUCKER and McCORMICK, JJ., concur.