WILKIN INSULATION COMPANY, Plaintiff, v. BILL HOLTZ, Defendant and Third–Party Plaintiff-Appellee (Steven Edelson *et al.*, Third–Party Defend-ants-Appellants).

First District (4th Division) No. 1—88—0593

Opinion filed July 13, 1989.

Robert M. Knabe and Amy L. Gertler, both of Grund, Marcus & McNish, of Chicago, for appellants.

Steven J. Roeder and Gregory A. Friedman, both of Coffield, Ungaretti, Harris & Slavin, of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Third-party defendant Edelson (defendant) appeals from the trial court's entry of a default judgment against him and in favor of third-party plaintiff Holtz (plaintiff) in the amount of $9,398.41.

The chronology of relevant events culminating in the trial court's judgment are summarized for review as follows. On December 5, 1985, Wilkin Insulation Company (Wilkin), which is not party to this appeal, filed a breach of contract action against plaintiff to recover $675 for insulation materials Wilkin supplied to plaintiff for use at a building owned by defendant on West Schubert Avenue in Chicago. On January 21, 1986, plaintiff filed his answer and affirmative defenses

to Wilkin's complaint and a third-party complaint against defendant alleging that Edelson had failed to pay $5,234.56 for materials and labor provided by plaintiff in connection with the insulation of the building. Edelson was served with the complaint on February 10, 1986. On March 20, following defendant's failure to answer within the required time, plaintiff filed a motion for default judgment against defendant. After a hearing on April 4, at which defendant appeared through counsel, the trial court denied plaintiff's motion, granted defendant an additional 14 days to answer and set the matter for trial on May 30.

On May 28, defendant filed motions to transfer venue and compel discovery which were noticed for hearing on May 30, the scheduled trial date. In his motion defendant requested, *inter alia*, that plaintiff be ordered to submit to a deposition and that he (defendant) be given an additional 28 days thereafter to file his answer and a possible counterclaim. On May 30, the trial court denied defendant's motions to transfer venue and compel discovery but granted him an additional 28 days to answer plaintiff's complaint. On that same day, upon defendant's settlement with Wilkin for the $675 sought in Wilkin's complaint, Wilkin's action against plaintiff was dismissed.

On June 30, the trial court *sua sponte* entered a default judgment against defendant for failure to answer or otherwise respond to plaintiff's complaint, and set a proveup hearing for July 28, 1986. On that date, defendant filed a motion to strike and dismiss the complaint. This motion was continued to August 15, on which date the trial court vacated the default judgment entered on June 30 and dismissed plaintiff's complaint without prejudice.

On October 31, plaintiff filed a verified, first-amended complaint against defendant on theories of breach of contract, unjust enrichment and fraud. Counts I and II sought recovery of $4,163.85 for work done on the Schubert Avenue property, and counts III and IV sought $5,234.56 for services rendered in connection with another parcel of property located on Ravenswood Avenue. On November 19, defendant filed a motion to strike the first-amended complaint, to which plaintiff responded on December 5. Following a hearing on December 12, the trial court denied defendant's motion to strike, ordered him to answer the complaint by January 16, 1987, and set the matter for pretrial conference on January 30, 1987. On December 17, defendant filed a notice of deposition to depose plaintiff on December 24 and a set of interrogatories. On December 29, without notice to plaintiff, defendant filed an unsigned, unverified "answer" to the first-amended complaint. On January 28, 1987, plaintiff filed his second motion for default judgment against defendant. At the January

hearing thereon, the trial court, on defendant's request, extended the time for defendant to answer or otherwise plead to March 2, 1987.

In the course of the discovery proceedings over the next several weeks, the parties each filed motions for sanctions against the other. As a result of defendant's failure to file an answer by March 2, as ordered by the trial court, plaintiff filed his third motion for default judgment. On March 6, without notice, defendant filed an "Answer to the Motion for Default and a Motion to Extend Time to File Answer and Countercomplaint." The trial court denied defendant's motion and, over his objection, granted plaintiff's motion for default judgment for the full amount sought in the complaint.

On March 12, defendant filed a motion to vacate the default judgment and for leave to file an "amended answer and counterclaim" within 14 days. On April 22, the trial court vacated the default judgment and allowed defendant to substitute as an answer a signed, verified copy of the one filed on December 29, 1986, in which he denied the allegations in plaintiff's complaint and stated as an affirmative defense that the contract alleged therein was between the owners of the Ravenswood Avenue property and All American Construction Company (All American), a corporation in which he was an officer and shareholder.

On May 6, 1987, an agreed order was entered allowing plaintiff to file a second–amended third-party complaint adding All American as a third-party defendant, giving defendant and All American 21 days to file their answer and any counterclaims and providing for the completion of depositions at the courthouse in Niles, Illinois, at 10 a.m. on June 17. On June 5, plaintiff filed a fourth motion for default judgment against defendant for failure to answer his second-amended complaint within the time prescribed by the agreed order. On June 8, defendant and All American filed their answer to the complaint and All American also filed a counterclaim against plaintiff. On June 9, the trial judge continued plaintiff's June 5 motion for default judgment until the afternoon of June 17, following the completion of the scheduled depositions.

Defendant filed his counterclaim on June 12. He did not, however, appear for the deposition on June 17. At the hearing later that day, the trial court ordered defendant to pay plaintiff's costs in connection with the deposition, granted plaintiff's motion to strike All American's counterclaim and granted plaintiff's motion for default judgment against defendant in the amount of $9,398.41 plus costs. The trial court also scheduled a hearing on the parties' earlier-filed motions for

sanctions for August 12. On January 27, 1988, the parties entered into and filed an agreed order in which they withdrew their respective motions for sanctions and dismissed the action against All American. This appeal followed.

OPINION

 Section 2—1301(d) of the Illinois Code of Civil Procedure provides that default judgments "may be entered for want of an appearance, or for failure to plead." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1301(d).) Entry of a default judgment is a matter within the discretion of the trial court. (*Freeborn & Peters v. Professional Seminars Associates, Inc.* (1988), 176 Ill. App. 3d 714, 532 N.E.2d 806.) In ruling on a motion for default judgment, the primary concern of the court should be to do substantial justice between the parties. (*Widicus v. Southwestern Electric Cooperative, Inc.* (1960), 26 Ill. App. 2d 102, 167 N.E.2d 799.) Substantial justice is a broad concept which does not lend itself to precise definition. (*Matter v. Quesnell* (1985), 133 Ill. App. 3d 388, 478 N.E.2d 880.) However, factors relevant to the determination of what constitutes substantial justice include whether the defendant acted with reasonable diligence, whether defendant has a meritorious defense, the severity of the penalty resulting from the entry of judgment, and the attendant hardship to the plaintiff of denying the motion for judgment. (*Havana National Bank v. Satorius-Curry, Inc.* (1988), 167 Ill. App. 3d 562, 521 N.E.2d 645.) As noted in *Nixon v. Harris* (1975), 31 Ill. App. 3d 204, 333 N.E.2d 667, the doing of substantial justice must also recognize the rights of the plaintiff and of other litigants whose cases merit the attention of the court. Although default judgment is a harsh remedy which courts traditionally have been liberal in setting aside, as noted more than two decades ago in *Coleman v. Toohey* (1964), 48 Ill. App. 2d 75, 198 N.E.2d 580, courts are becoming less liberal in setting aside such judgments as dockets increase to voluminous proportions; and relief is not automatic (*Matter v. Quesnell* (1985), 133 Ill. App. 3d 388, 478 N.E.2d 880; *Plantaric v. Michaels* (1981), 98 Ill. App. 3d 154, 424 N.E.2d 64; *Central Telephone Co. v. Amedio Ritacca & Sons, Inc.* (1974), 23 Ill. App. 3d 171, 318 N.E.2d 515). A defendant who has shown a pattern of deliberate delay or a lack of diligence and has ignored the court's commands or treated them with indifference does not have the right to insist he be allowed to defend. (*Central Telephone*, 23 Ill. App. 3d 171, 318 N.E.2d 515.) Repeated violations of the court's orders and a continuous disregard for the court's authority are themselves sufficient to justify the exercise of the court's discretion to enter judg-

ment against defendant. (*Matter v. Quesnell* (1985), 133 Ill. App. 3d 388, 478 N.E.2d 880; *Hub Airlines, Inc. v. Bouska* (1975), 29 Ill. App. 3d 565, 331 N.E.2d 400; *Central Telephone Co. v. Amedio Ritacca & Sons, Inc.* (1974), 23 Ill. App. 3d 171, 318 N.E.2d 515; *Stickler v. McCarthy* (1965), 64 Ill. App. 2d 1, 212 N.E.2d 723.) A reviewing court should not interfere with the trial court's discretionary control over trial delays absent a clear abuse of discretion in its determination of what action is most accordant with the furtherance of justice. *Havana National Bank v. Satorius-Curry, Inc.* (1988), 167 Ill. App. 3d 562, 521 N.E.2d 645.

In entering judgment in this case, the trial court noted the numerous delays and disregard of previous court orders by defendant. The court then stated, *inter alia*:

"Your disregard of my orders [is] getting to a point [of] being contumacious. *** This isn't the first time you strained the patience of this Court. This Court feels and has always felt that a liberal interpretation of the [Code] was the thing to do. I always believed the framework of the [Code] had meant it to be applied and interpreted rather loosely and in a broad manner to entitle all parties to get their proper day in court. *** However, there is a point in time where there has to come to a screaming halt what the Court perceives is laches, vexatious delay and using the [Code] itself for delay and using the Court process itself *** to satisfy what the Court perceives as personal animosities. The Court feels that the time has come to rule according to the letter of the law. You [defendant] were given 21 days to answer. You didn't do it. Therefore, this motion for default judgment is entered *** in the amount claimed for in the motion."

Similarly, in dismissing the counterclaim and granting plaintiff costs, the court stated:

"I go right back to the [May 6] order again and I honestly feel you are trying the patience of the Court again. The matter has gone on far enough that somewhere in the law it states enough is enough is enough. This order was very plain. *** You violated my order that any counterclaim shall be filed within the same 21 days period. The counterclaim is dismissed for the same reason."

■ Based upon our review of the record, we agree with the trial court that default judgment was appropriate in this case. As the events chronologized above reveal, defendant not only failed to answer plaintiff's original complaint within the time prescribed by stat-

ute but also failed to comply with numerous court orders extending the time within which to answer or otherwise plead:

For example, defendant's only response to plaintiff's original complaint was by way of a motion to strike and dismiss on July 28, 1986. This motion was filed without notice or leave of court approximately eight months after the suit was brought, more than four months after plaintiff's first motion for default judgment and nearly 30 days after the trial court had *sua sponte* entered default judgment against him for failing to comply with previous orders which granted his requests for additional time to answer, set specific dates by which he was obliged to do so and scheduled the cause for trial.

Following vacatur of that default judgment and the denial of his motion to dismiss plaintiff's verified first-amended complaint, defendant, without notice to plaintiff, filed a document entitled "answer." The document, however, was unsigned and unverified. Nevertheless, when the parties appeared at the next scheduled hearing, the trial court denied plaintiff's second motion for default judgment and granted defendant another extension of time by which to plead.

When defendant once more failed to answer within the extended time granted by the trial court, plaintiff filed his third motion for default judgment. At the hearing thereon, defendant, without prior notice to plaintiff, filed another motion to extend the time to answer the complaint along with his response to the motion for default judgment. At the conclusion of the hearing, the trial court entered default judgment for plaintiff, but a few days later, defendant once again requested vacatur of the judgment. The trial court vacated the second default judgment and granted defendant leave to substitute a signed verified copy of the "answer" filed by him four months earlier.

On May 6, 1987, plaintiff filed his second-amended complaint and an agreed order was entered providing that defendant and All American were to answer and file any counterclaims within 21 days, *i.e.*, by May 27, 1987, which was approximately 1½ years after institution of this action. The order also provided that the parties would appear at the courthouse at 10 a.m. on June 17 to complete their depositions under the supervision of the court. Notwithstanding that this was an agreed order, defendant failed to file any responsive pleading to plaintiff's second-amended complaint, which prompted plaintiff's fourth motion for default judgment. Following defendant's and All American's subsequent filing of their answer and counterclaim, the court continued plaintiff's motion for default judgment for a hearing following the completion of the depositions on June 17. In violation of the agreed order, defendant failed to appear for that scheduled

deposition. It was later that afternoon when the trial court made the statements quoted above and entered default judgment against defendant for the third time.

We agree with the trial court that the events of this case constitute a pattern of deliberate delay and repeated disobedience of the trial court's orders by defendant. We further believe that this delay and disregard of the court's authority has resulted in substantial hardship and injustice to plaintiff. Defendant's unreasonable protraction of this litigation compelled plaintiff to expend significant amounts of time and to incur considerable expense in pursuit of a relatively small claim. Repeated violations of court orders such as occurred in this case also work a hardship on the trial court, other litigants and the court system as a whole by unnecessarily consuming time which would otherwise be allotted to other cases on an already voluminous circuit court docket. On the facts of this case, having considered all the circumstances, it is our view that the trial court did not abuse its discretion in determining that the interests of substantial justice warranted entry of default judgment against defendant.

Relying on *Elfman v. Evanston Bus Co.* (1963), 27 Ill. 2d 609, 190 N.E.2d 348, defendant also contends that the trial court erred in assessing damages without affording him the opportunity to contest their basis or extent. In our opinion, defendant's reliance on *Elfman* is misplaced. We note that in *Elfman*, the plaintiff failed to give defendant notice of the default judgment until the 30-day period staying execution of it had expired and that the damage award of $10,000 included expenses for medical treatment wholly unrelated to the injuries sustained in the incident giving rise to the suit, which, plaintiff had earlier advised defendant, resulted in special damages of $259. Upon learning of the default judgment, the defendant immediately filed a post-judgment petition to vacate the judgment, which was denied. The supreme court reversed the appellate court's affirmance of the trial court's order denying the post-judgment petition on the principle that "one may not enforce a default judgment attended by unfair, unjust or unconscionable circumstances." The court stated that it appeared from the totality of circumstances of the case that plaintiff had knowingly and intentionally taken advantage of both defendant and the trial court and would gain an unconscionable advantage unless the default judgment were vacated. The court thus held that "fairness and justice" required the exercise of equitable powers to grant relief from a judgment so obtain and ruled that defendant be given an opportunity to appear and defend on the issue of damages.

■ *Elfman* is clearly distinguishable from the case at bar. Here,

unlike *Elfman*, defendant was aware of both the entry and the amount of the default judgment, having been present at the hearing at which it was entered against him. However, the transcript of proceedings reveals that defendant did not request a hearing to defend on the issue of damages. Neither did he file a post-trial motion seeking either vacatur of the default judgment in its entirety or vacatur of that portion relating to the amount of the judgment on the grounds that he was not given the opportunity to defend on the issue of damages or that they were unconscionable. We therefore find that defendant has waived this issue for purposes of review and that facts before us do not warrant the invocation of equitable powers of the court as were appropriate in *Elfman*.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.