First Division
June 29, 2007

No. 1-06-2165

| | | |
|---|---|---|
| STEPHEN P. KOPPEL and JOEL P. KOPPEL, | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT MICHAEL and CITIZENS BANK AND | ) | |
| TRUST COMPANY OF CHICAGO, | ) | 03 L 7743 |
| | ) | |
| Defendants-Appellants | ) | |
| | ) | |
| (Nicholas Tanglis, | ) | Honorable |
| | ) | Allen S. Goldberg, |
| Defendant). | ) | Judge Presiding |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Defendants Robert Michael and Citizens Bank and Trust Company of Chicago (Citizens) appeal the trial court's default judgment order in favor of plaintiffs Stephen P. Koppel and Joel P. Koppel as a sanction for discovery noncompliance. The trial court awarded plaintiffs a total judgment of $407,370.62, including attorney fees.

On appeal, defendants argue that the trial court erred in (1) entering a default judgment order as a discovery sanction, (2) awarding damages without conducting an evidentiary hearing, (3) awarding attorney fees and costs without an evidentiary hearing, and (4) denying defendants' emergency motion to vacate the default judgment order.

On June 27, 2003, plaintiffs filed a four-count complaint against defendants Michael, Citizens and Nicholas Tanglis. The complaint alleged the following facts pertinent to this appeal. Tanglis was the president and a shareholder of Citizens while Michael was the chairman of the

board of the directors of Citizens and a shareholder.

In or around May 1998, Michael and Tanglis approached plaintiffs for an investment in Citizens, which Michael and Tanglis were in the process of forming. Plaintiffs indicated their interest in the investment. In the summer of 1998, Michael and Tanglis told plaintiffs that even though Citizens was not open, they had prospective borrowers. They asked plaintiffs to advance the money requested by the prospective borrowers to prevent the customers from going to another bank. Plaintiffs agreed to loan the funds, even though Citizens was not expected to open for another four to six months. Plaintiffs loaned Michael and Tanglis a total of $180,000. The complaint alleged that the parties agreed that plaintiffs would be repaid by Michael and Tanglis, with interest at the rate of 10%, plus one point.

Citizens did not open until February 2000. In the spring of 2000, plaintiffs requested repayment. Michael and Tanglis informed plaintiffs that although the original borrowers had repaid the loans, they had loaned the proceeds to other customers of Citizens and were unable to repay plaintiffs. Plaintiffs continued to request repayment over the next 2 1/2 years, but were unsuccessful.

Plaintiffs' complaint alleged breach of contract against Tanglis (count I), Michael (count II), and Citizens (count III). Count IV raised an additional breach of contract claim against Michael based on the following additional facts. In November 1998, plaintiffs made a loan of $150,000 to Michael, with an interest rate of 6%. In May 1999, Michael agreed to assume the additional indebtedness to plaintiffs of $350,000, which represented the principal amount of a loan made to Michael's brother. The parties agreed that the combined loans of $500,000 would bear

interest at an annual rate of 3%. In November 2001, Michael repaid the principal amount of the loan, but failed to pay any interest. Michael has continued to refuse paying the interest.

Tanglis did not appear in the case and a default judgment was entered against him. He is not involved in the appeal.

On October 21, 2003, plaintiffs served defendants with their first request for production of documents. On October 24, 2003, defendants filed a motion to dismiss plaintiffs' complaint. The motion was set for hearing on March 18, 2004. On December 8, 2003, plaintiffs filed a motion to compel discovery because defendants did not respond to plaintiffs' discovery request. On December 17, 2003, defendants filed a motion to quash subpoenas and stay discovery. The trial court continued plaintiffs' motion to compel and defendants' motion to quash subpoenas and stay discovery until March 18, 2004. On March 11, 2004, defendants filed a motion to substitute counsel and to continue the March 18, 2004, hearing on the pending motions. The trial court set the hearing for May 21, 2004, but ordered that "written fact discovery shall proceed." The hearing was subsequently continued until August 24, 2004.

On June 24, 2004, defendants filed a motion to stay discovery until the motion to dismiss was decided. The trial court continued the motion to stay discovery until August 24, 2004, to be heard in connection with the motion to dismiss. On August 24, 2004, the trial court denied defendants' motion to dismiss and lifted the stay on discovery.

On October 12, 2004, plaintiffs filed a verified amended complaint. The amended complaint contained the same four counts as the original complaint and added one count. Counts I, II, and III remained the same and the original count IV was changed to count V. Count IV

raised a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq. (West 2004)) against all defendants.

On December 16, 2004, plaintiffs filed a motion for discovery sanctions because defendants had failed to respond to plaintiffs' request for production of documents as well as answer plaintiffs' first set of interrogatories. On January 5, 2005, the trial court gave defendants "until February 2, 2005[,] to answer plaintiffs' first set of interrogatories and produce the documents (without objection) requested by plaintiffs' first request for production of documents." The court also allowed defendants' new attorney to file an appearance on behalf of defendants.

On February 7, 2005, the trial court ordered defendants to pay plaintiffs' attorney fees in connection with that day's appearance as a sanction for "having failed to appear through counsel and having failed to provide the discovery ordered by the Court on January 5, 2005." The court also noted that "defendants are hereby advised that the nature of the sanctions imposed will become more severe as their non-compliance persists."

On March 8, 2005, plaintiffs filed a "renewed motion for default judgment for defendants' continuing refusal to comply with this court's discovery orders." On March 10, 2005, the trial court ordered defendants to pay $500 in connection with the February 7, 2005, order and ordered defendants to pay the fees incurred by plaintiffs in preparing their renewed motion for default judgment and their court appearance on March 10, 2005. Again, the court noted that "sanctions will continue to increase with defendants' continuing non-compliance with the court's orders."

On April 15, 2005, the trial court set the case for status on May 16, 2005, regarding defendants' compliance with outstanding discovery. The order also reminded defendants that

sanctions will increase until compliance.

On May 16, 2005, the trial court ordered defendants to pay $2,800 in response to the March 10, 2005, order as well as the previously imposed $500 sanction within 14 days. The court also held that "by virtue of defendants' continuing non-compliance with discovery, defendants are barred from calling any witnesses at trial." The court noted that this bar would be vacated if there was compliance.

On July 11, 2005, the trial court entered default judgment in favor of plaintiffs and against defendants as a sanction for "defendants' continuing noncompliance with this court's discovery orders." The court stated that the default judgment would be vacated if there was "full compliance with the court's prior orders by July 22, 2005[,] at 9:30 a.m."

On July 22, 2005, defendants' attorney appeared in court with a box of documents to comply with prior discovery orders. The trial court continued the case until August 2, 2005, to allow plaintiffs to review the documents to verify compliance. On July 28, 2005, plaintiffs filed their motion in "opposition to vacating default judgment based upon defendants' continuing refusal to comply with discovery orders." Plaintiffs asserted that defendants failed to fully comply with discovery requests because defendants entered objections to several document requests, even though the trial court had previously ordered production without objection. The trial court continued the matter until September 23, 2005.

On September 23, 2005, when defendants' attorney did not appear, the trial court entered an order continuing the matter until September 30, 2005, and ordering defendants' attorney to "provide an affidavit stating the nature of his illness."

On February 22, 2006, the trial court held a hearing on defendants' motion to vacate the default judgment entered on July 11, 2005. Neither defendants nor their attorney appeared at the hearing. The trial court entered a written order denying defendants' motion to vacate the default judgment and awarded damages to plaintiffs. The court awarded $315,340 on counts II, III, and IV against both defendants, jointly and severally, $45,300 on count V against Michael, and $46,730.62 in attorney fees and costs.

On March 22, 2006, represented by new counsel, defendants filed an emergency motion to vacate the February 22, 2006, default judgment order. In their motion, defendants contended that they were unaware of the discovery noncompliance, monetary sanctions, and default judgment and that their former attorney failed to keep them properly informed about the case. The motion characterized the case as "an ongoing battle between plaintiffs' counsel and counsel previously representing defendants." In an affidavit, Michael stated that he was not informed of the default judgment until the last week of February 2006. He also said that at no time prior to the last week in February "was [he] ever given to understand that either [he] or the Bank was either tardy or non-compliant with respect to any discovery requests that may have been issued by plaintiffs' counsel in connection with the pending litigation." On that date, defendants also filed an emergency motion for leave to file an additional appearance. Plaintiffs filed a response to the motion and later supplemented their motion with minutes from monthly meetings of the Citizens' board of directors, in which Michael reported on the status of the case, to dispute Michael's affidavit.

On June 20, 2006, the trial court conducted an evidentiary hearing on defendants'

emergency motion to vacate the February 22, 2006, default judgment order. At the hearing, plaintiffs subpoenaed defendants' former attorney to testify in response to defendants' argument that the former attorney failed to notify them of the discovery noncompliance.

On July 20, 2006, the trial court issued its written order denying defendants' emergency motion to vacate. The court found that defendants could not "abdicate their responsibility because of [the former attorney's] health; they were required to turn over documents." The court noted that the former attorney testified at the evidentiary hearing that his health problems had no bearing on defendants' responsibility of following the court's orders and knowledge of the case.

In regard to defendants' noncompliance, the court stated:

"Here, Defendants have a history of not responding to Plaintiffs' request for documents and the Court's own orders compelling them to do so. Initially, the sanctions against Defendants were minor in that Plaintiffs were only awarded fees and, in an attempt to encourage discovery and hold Defendants responsible for further delay, the monetary sanctions would increase for continued non-compliance. Because of Defendants' non-compliance, the fees increased and eventually this Court took entered [*sic*] default judgment in favor of Plaintiffs. As this timeline shows, Defendants had ample opportunity to comply with this Court's orders and Plaintiff's request for documents. The Court ordered default judgment against Defendants as a last resort

measure because Defendants were not living up to their obligations as fairness and justice required."

The court also addressed Michael's "seemingly false affidavit."

"The affiant claims ignorance about the past proceedings, particularly the escalating sanctions, in this case. Plaintiffs have provided evidence that not only did Defendants know about the progressing litigation, they spoke about this case on a monthly basis. Additionally, [the former attorney's] testimony at the evidentiary hearing sheds light on the truthfulness of Defendant's affidavit. Seemingly, Defendants knew they were noncompliant with the Court's many orders compelling discovery, and they also knew that this case was in jeopardy because of noncompliance. Michael's false affidavit shows a 'deliberate and contumacious disregard for the court's authority.' [Citation.]"

This appeal followed.

On appeal, defendants argue that the trial court erred in failing to vacate the default judgment entered against them because they complied with the court-ordered discovery. In the alternative, defendants assert that they were entitled to an evidentiary hearing to determine the amount of damages and proper attorney fees.

Supreme Court Rule 219 addresses the consequences of refusing or failing to comply with discovery rules or orders and the trial court has broad powers to enforce its discovery orders.

8

166 Ill. 2d R. 219.  Subsection c of the Rule 219 specifies that if a party:

> "unreasonably fails to comply with [the discovery rules] or fails to comply with any order entered under these rules, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including, among others, the following:
>
> * * *
>
> (iv) That a witness be barred from testifying concerning that issue;
>
> (v) That, as to claims or defenses asserted in any pleading to which that issue is material, a judgment by default be entered against the offending party or that the offending party's action be dismissed with or without prejudice[.]" 166 Ill. 2d R. 219(c).

Rule 219(c) further provides that "[i]n lieu of or in addition to the foregoing, the court, upon motion or upon its own initiative, may impose upon the offending party or his or her attorney, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee, and when the misconduct is wilful, a monetary penalty." 166 Ill. 2d R. 219.

"Under Rule 219(c), the imposition of sanctions is largely a matter within the discretion of the trial court and will not be disturbed on review unless the sanctions constitute an abuse of discretion such as where the sanctioned party's conduct was not unreasonable or where the sanction itself is not just." Hartnett v. Stack, 241 Ill. App. 3d 157, 172 (1993).

"The purpose of imposing sanctions is to coerce compliance with court rules and orders, not to punish the dilatory party." Sander v. Dow Chemical Co., 166 Ill. 2d 48, 68 (1995). "Our discovery procedures are meaningless unless a violation entails a penalty proportionate to the gravity of the violation. Discovery for all parties will not be effective unless trial courts do not countenance violations, and unhesitatingly impose sanctions proportionate to the circumstances." Buehler v. Whalen, 70 Ill. 2d 51, 67 (1977). "To determine whether a sanction order was just, a court must look to the conduct that gave rise to the sanction order and to the effect of that conduct on the parties." Hartnett, 241 Ill. App. 3d at 173.

However, "[d]ismissal of a cause of action or sanctions which result in a default judgment are drastic sanctions and should only be employed when it appears that all other enforcement efforts of the court have failed to advance the litigation." Sander, 166 Ill. 2d at 67-68. "Dismissal of a cause of action for failure to abide by court orders is justified only when the party dismissed has shown a deliberate and contumacious disregard for the court's authority." Sander, 166 Ill. 2d at 68. "[B]efore a default judgment will be set aside, the sanctioned party has the burden of establishing that his failure to comply with discovery orders was justified by extenuating circumstances and must show a willingness to comply with discovery orders in the future." Hartnett, 241 Ill. App. 3d at 176.

Here, defendants conceded before the trial court that they had been subject to 12 orders regarding their discovery noncompliance. They further concede on appeal that the initial sanctions for attorney fees were proper, but have never been paid. Yet, they maintain that they acted with due diligence and fully complied with the trial court's orders, even though they

10

continue to assert that plaintiffs' production requests were overbroad.

Our review of the record shows that defendants were initially served with plaintiffs' first request for document production on October 21, 2003. Three days later, defendants filed a motion to dismiss plaintiffs' complaint and discovery was stayed through a series of orders until the motion to dismiss was denied on August 24, 2004. Once the stay on discovery was lifted, defendants failed to respond to plaintiffs' requests. The trial court issued several orders from January 2005 to July 2005, which entered increasing sanctions against defendants to compel discovery. Those orders culminated in the July 11, 2005, entry of a default judgment.

In the July 11, 2005, order entering a default judgment, defendants were given until July 22, 2005, to comply and the default judgment would be vacated. On July 22, 2005, defendants' former attorney gave plaintiffs a box of documents, which defendants contend constituted full compliance. However, defendants' answer to plaintiffs' document request included objections to multiple documents that they believed constituted "confidential supervisory information" pursuant to section 48.3 of the Illinois Banking Act (Act) (205 ILCS 5/48.3 (West 2004)). According to defendants' answer, "certain production requests of plaintiffs may fall within the restriction of disclosure as contained in the Act. As such, disclosure or production of such confidential supervisory information is restricted unless the guidelines of subsections (c)(1)-(3) are met." Defendants made these objections in contradiction of the trial court's January 5, 2005, order, which ordered production without objection.

Defendants contend that these objections were required under the Act and that if they did not object, they would be subject to a penalty.

Section 48.3(a) of the Act defines "confidential supervisory information" as follows:

> "Any report of examination, visitation, or investigation prepared by the Commissioner under this Act, the Electronic Fund Transfer Act, the Corporate Fiduciary Act, the Illinois Bank Holding Company Act of 1957, and the Foreign Banking Office Act, any report of examination, visitation, or investigation prepared by the state regulatory authority of another state that examines a branch of an Illinois State bank in that state, any document or record prepared or obtained in connection with or relating to any examination, visitation, or investigation, and any record prepared or obtained by the Commissioner to the extent that the record summarizes or contains information derived from any report, document, or record described in this subsection[.]" 205 ILCS 5/48.3(a) (West 2004).

However, the Act excludes "any information or record routinely prepared by a bank or other financial institution and maintained in the ordinary course of business or any information or record that is required to be made publicly available pursuant to State or federal law or rule" from the meaning of "confidential supervisory information." 205 ILCS 5/48.3(a) (West 2004).

Defendants used the Act as the basis for their objections to the production of the defendants' federal and state income tax returns, defendants' financial statements, any documentation of indebtedness and other liabilities and assets, all loans or notes payable to

defendants, all documents relating to wire transfers for Michael, all documents relating to Michael's account at Citizens, and all documents relating to any checks or drafts written to or by Michael. The documents were limited to 1998 through the present time of discovery.

The documents requested by plaintiffs do not appear to be comprised of "any report of examination, visitation, or investigation" by the Commissioner. Rather, the documents, including tax returns, bank account statements, and checks, seem to fit into the exclusion as "information or record routinely prepared by a bank *** and maintained in the ordinary course of business." However, even if these documents did fit within the definition of "confidential supervisory information," defendants did not adhere to the statute in raising these objections.

While subsection 48.3(c)(1) prohibits disclosure of "confidential supervisory information" without authorization from the Commissioner, subsection 48.3(c)(2) provides that when a request is made for any "confidential supervisory information," the Commissioner shall be notified and a determination regarding disclosure will be made within 15 days. 205 ILCS 5/48.3(c)(1), (c)(2) (West 2004). Defendants failed to notify the Commissioner prior to the objections being raised. According to the record, the Commissioner was not notified of the objections until May 3, 2006. At the June 20, 2006, hearing, defendants' attorney stated that the Commissioner found that there was no "confidential supervisory information" contained in the requests. Following that statement, defendants' attorney continued to object to the production of those documents as being "extremely overbroad."

Defendants contend that the objections under the Act were timely and they also should have been heard on their objections that the document requests were overbroad. However,

13

defendants failed to raise these objections in a timely fashion. Defendants were aware of what documents plaintiffs were seeking in discovery in October 2003, but failed to raise these objections until July 2005, and also failed to contact the Commissioner until May 2006. Defendants should not be able to seek the protection of the Act, but then fail to follow the Act's provisions. Since defendants failed to follow the statute in a timely fashion, they did not fully comply with the trial court's discovery orders. Defendants' disregard for the trial court's orders is further shown by defendants' continued objections to these documents.

As the trial court stated in its July 20, 2006, written order, "Defendants, however, have shown that no sanction would encourage them to satisfy their obligations and respect the Court's authority. *** Moreover, Defendants' lack of compliance has increased Plaintiffs' cost and wasted valuable judicial resources." Defendants' actions in the trial court showed "a deliberate and contumacious disregard for the court's authority" (Sander, 166 Ill. 2d at 68), through repeatedly ignoring the court's orders and leading up to the filing of a "seemingly false affidavit" with the court. Based on the circumstances presented, the trial court did not abuse its discretion in entering a default judgment against defendants.

Defendants next contend that the trial court erred in failing to conduct an evidentiary hearing on damages before awarding plaintiffs' $315,340 against both defendants and $45,300 against Michael. However, defendants failed to raise this issue before the trial court. In response to the trial court's February 22, 2006, default judgment order awarding damages to plaintiffs, defendants filed an emergency motion to vacate that order. In their written motion and memorandum of reply, defendants did not claim that they were deprived of an evidentiary hearing

14

on damages and they made no demand for one. At the June 20, 2006, evidentiary hearing on defendants' motion, the only mention of defendants' contest to the damages occurred at the end of the hearing. Defendants' attorney made the following statement at the conclusion of his argument:

> "We ask that the Court vacate the judgement of default and give us an opportunity — and one more thing, with judgment of default on liability we had no opportunity to defend on damages, but we ask that the Court to vacate [*sic*] of default, give the Defendants an opportunity to have a hearing in that regard."

We find that this was not sufficient to have presented the issue of an evidentiary hearing on damages to the trial court and therefore, defendants have waived this issue on appeal. See Wilkin Insulation Co. v. Holtz, 186 Ill. App. 3d 151, 158-59 (1989).

Defendants also contend that the trial court erred in awarding plaintiffs $46,730.62 in attorney fees and costs because the court failed to conduct an evidentiary hearing on this issue. However, the record belies defendants' argument. The transcript for the February 22, 2006, hearing contains a discussion between the trial court and plaintiffs' attorney regarding the attorney's submitted fee petition. The court considered the fee petition and concluded that the appropriate award was half of the amount requested, $93,000. On appeal, defendants assert that no evidentiary hearing was held and that the fee petition was "vague, incomplete and confusing." Defendants base this assessment of the fee petition on the transcript of the February 22, 2006, hearing, but failed to include the fee petition in the record on appeal. Defendants, as the

appellants, bear the burden of providing a sufficiently complete record to support their claim or claims of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Foutch v. O'Bryant, 99 Ill. 2d 389, 391-92 (1984). Moreover, any doubt arising from the incompleteness of the record will be resolved against the appellants. Foutch, 99 Ill. 2d at 392. Since we do not have plaintiffs' attorney fee petition before us, we must presume that the trial court's order was proper.

Finally, plaintiffs make a single-sentence request, without argument, that this court should award sanctions against defendants pursuant to Supreme Court Rule 375(b) (155 Ill. 2d R. 375(b)). We do not believe that further sanctions are appropriate in this case and decline to impose them.

Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

CAHILL and R. GORDON, JJ., concur.