NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220294-U

NO. 4-22-0294

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 6, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* M.M., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (Michelle E., | ) | Knox County |
|     Petitioner-Appellant, | ) | No. 21P69 |
|     v. | ) | |
| The Illinois Department of Children and | ) | Honorable |
| Family Services and Michael M., | ) | Curtis S. Lane, |
|     Respondents-Appellees). | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The trial court did not abuse its discretion in denying petitioner's motion for default judgment even though respondent did not file a written response to the amended petition for four months; it had actively participated in the proceedings prior thereto.

    (2) The trial court did not err in granting respondent's motion to dismiss even though the motion was made orally and unnoticed when petitioner could not demonstrate prejudice from the dismissal.

¶ 2    Petitioner, Michelle E., sought guardianship over her niece, M.M., born March 15, 2008. She named M.M.'s biological parents as respondents. At the time, a juvenile case, wherein M.M. had been made a ward of the court, was pending and active and the Illinois Department of Children and Family Services (DCFS) had been named M.M.'s guardian. After multiple hearings in this case on the pleadings, the trial court dismissed Michelle's petition. She appeals, claiming

the trial court erred by (1) not entering a default judgment against DCFS when it failed to timely file a written response to her amended petition and (2) granting DCFS's motion to dismiss. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4            On April 20, 2021, Michelle filed a (1) petition for guardianship of M.M., (2)motion to appoint a guardian *ad litem* (GAL), and (3) petition for temporary guardianship "until any final ruling" on her petition. Michelle alleged M.M. was "currently under the care, custody[,] and control of [DCFS], pursuant to Knox County Case No. 20-JA-50," but that, "upon information and belief, [DCFS] [was] not objecting to the appointment of [Michelle] as guardian of the estate and person of the minor child." She further alleged she was involved in M.M.'s life and was providing beneficial services to the minor and the foster family during the pendency of the case, despite the fact she resided in Kentucky. She claimed M.M.'s foster placement was temporary (as supported by an attached affidavit by the foster mother), while she was willing to provide M.M. with an immediate and permanent placement. The trial court appointed a GAL.

¶ 5            On May 12, 2021, DCFS entered its appearance as "movant," and on June 1, 2021, filed a motion to dismiss, with an accompanying memorandum of law, pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)) (allowing a party to file one motion combining multiple requests for relief). According to its memorandum of law, DCFS requested Michelle's petition be dismissed because (1) pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)), her petition was "statutorily deficient," (2) pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)), her petition was void for lack of jurisdiction, and (3) also pursuant to section 2-619, her petition was premature.

¶ 6        Specifically, as to its section 2-615 claim, DCFS asserted Michelle's petition failed to provide the statutorily prescribed information set forth in the Probate Act of 1975 (Probate Act), the statute governing the appointment of a guardian for a minor. See 755 ILCS 5/11-5, 11-8 (West 2020). As to its section 2-619 claims, DCFS asserted (1) it was awarded guardianship of M.M. in pending case No. 20-JA-50 by the juvenile court, which has "exclusive and continuing jurisdiction over the custody, guardianship, and placement of this minor," so the trial court here was without jurisdiction to consider Michelle's petition and any order entered in the matter would be void *ab initio* and (2) Michelle's petition for her appointment as a permanent guardian was premature when DCFS had not yet determined whether M.M.'s "parents will comply with their service plans and the juvenile court's orders to secure the return of the minor child to their/his/her custody." DCFS considered the petition as "an improper collateral attack" on the placement decisions made in the juvenile court case. It asserted Michelle did not have standing to intervene in the juvenile court case and has filed the petition in this concurrent matter as an improper way to collaterally challenge the guardianship award there.

¶ 7        Also on June 1, 2021, DCFS filed a motion for leave to intervene as a matter of right as a necessary party pursuant to section 2-408(a) of the Code (735 ILCS 5/2-408(a) (West 2020)), asserting that, at a dispositional hearing, on April 20, 2021, in case No. 20-JA-50, the biological parents were found unfit and/or unable to care for M.M. However, their parental rights were not terminated and DCFS was appointed as M.M.'s guardian with the right to find her an appropriate placement. DCFS averred it objected to Michelle's petition and cause of action. We note the record does not indicate whether the trial court ever ruled on DCFS's motion for leave to intervene. For the purposes of this appeal, because no party objects otherwise, we will assume the trial court found DCFS's motion to intervene was timely and allowed the same.

¶ 8  Although the certificate of service for the foregoing DCFS pleadings indicated the same were mailed to Michelle's counsel, Michelle apparently did not receive them because on June 25, 2021, she filed a motion for default judgment, claiming DCFS had entered an appearance but had not filed a responsive pleading. She also moved for a default judgment against each biological parent. Her motion for default judgment was scheduled to be heard on August 9, 2021. The record does not include a report of proceedings from that hearing.

¶ 9  Pursuant to a written order entered by the trial court on August 11, 2021, a default judgment was entered against each parent and the matter was scheduled for a September 9, 2021, hearing on DCFS's motion to dismiss. We presume Michelle withdrew her motion for a default judgment against DCFS. On September 7, 2021, Michelle filed a motion to consolidate the juvenile court case with this case "in the interest of judicial economy."

¶ 10  On October 12, 2021, the trial court, the Honorable William A. Rasmussen presiding, conducted a hearing on DCFS's motion to dismiss. The court first set aside the default judgment against the biological father. Next, the court considered DCFS's arguments in support of its section 2-619.1 motion and, when announcing its decision, noted the State's argument that the juvenile court had "exclusive" jurisdiction over M.M.'s guardianship was not "proper." The court reminded the issue at hand was DCFS's motion to dismiss, not the merits of the appointment of a guardian. The court stated: "I'm not saying it would necessarily grant that motion, but we are here on a motion to dismiss where the State is saying they [(Michelle)] shouldn't even have a seat at the table. I—I disagree."

¶ 11  The trial court granted DCFS's section 2-615 motion, allowing Michelle leave to refile her petition in 21 days. The court denied DCFS's section 2-619 motion. The court also scheduled Michelle's motion to consolidate for hearing on December 14, 2021.

¶ 12        On November 1, 2021, Michelle filed an amended petition, adding the information required by the Probate Act. Specifically, Michelle added identifying information for the minor, the biological mother, the biological father, and other local relatives. Michelle noted M.M. and her sibling, A.M., resided in the same foster placement.

¶ 13        On November 9, 2021, the biological father filed an answer to the amended petition. On March 1, 2022, because DCFS had filed no responsive pleading, Michelle filed a motion for default judgment—the motion at issue in this appeal.

¶ 14        On March 8, 2022, the trial court, the Honorable Curtis S. Lane presiding, conducted a hearing on Michelle's motion to consolidate and motion for default judgment. Judge Lane was also presiding over the juvenile court matter. At the start of the hearing, the court asked for arguments on Michelle's motion to consolidate. Michelle's counsel asked if the court would prefer to hear her motion for default judgment first. The court stated: "That will be denied. Proceed with your [m]otion to [c]onsolidate."

¶ 15        Michelle's counsel presented her argument, requesting the two cases—the juvenile court case and this guardianship case—"travel together concurrently." Then, DCFS's counsel began his argument as follows:

> "MR. SIDERS [(DCFS'S ATTORNEY)]: Essentially, there's been no substantial rulings, hearings, or pleadings so, therefore, DCFS would initially make an oral Motion to Dismiss the Amended Petition for Adoption based on 735 ILCS 5/2—
>
> THE COURT: The guardianship, Mr. Siders?
>
> MR. SIDERS: Oh, I'm sorry. Yes. Guardianship.
>
> THE COURT: Okay. Based on what though?

MR. SIDERS: Based on essentially the arguments raised in the initial Motion to Dismiss which were not reached by the Court when it dismissed under 615. Essentially, that the probate case is an end run around the JA case and the lack of standing.

As the petitioner states in the Petition, the maternal aunt filed a Motion to Intervene in the juvenile case on November 30, 2020. After discussion with DCFS legal, that was withdrawn by oral motion on April 20, 2021, so, essentially, DCFS's position is that this is a collateral attack that involves DCFS's decisions as well as their previous rulings.

Two, the second reason is failure to exhaust administrative remedies. In the memorandum in opposition to the Motion to Dismiss, the plaintiff states that she was denied a request for a hearing on a DCFS administrative level. She can now request alternative placement since there has been a change in circumstances with the passage of time, and if she is denied, it's appealable under the Illinois Administrative Review Law 735 ILCS 5/3-101.

Further, under the Juvenile Court and Probate Act[s], the child's not available for guardianship at this time. The permanency goal in the juvenile case remains return home. Rights have not been terminated and the permanency goal has not been set at adoption or guardianship.

Following *In re A.T.*, (*sic*) 195 Ill. 2d 408, a 2001 case, the juvenile Court has exclusive continuing jurisdiction. So[,] this Court lacks subject-matter jurisdiction. And even if it's not dismissed under 619, this is an improper situation because the mother and/or father could consent to a guardianship adoption or

directed placement in the juvenile case. None of those have occurred because rights have not been terminated."

¶ 16        In response, Michelle's counsel asked the court to strike any discussion regarding a motion to dismiss, as the "same has not been pending." Counsel asked the court to consider only her motion to consolidate.

¶ 17        DCFS's counsel indicated he *did* have an argument against the motion to consolidate as well. He asked the court to read the docket entry from October 12, 2021. Thereafter, counsel stated: "[P]rocedurally the Motion to Dismiss under 619 was denied but the motion was granted under 615 and an Amended Complaint was filed; therefore, I believe it would be proper for the Court to consider a Motion to Dismiss even if made orally."

¶ 18        After considering the arguments of counsel, the trial court found as follows:

"All right. The Court has heard arguments. I don't believe I have jurisdiction over the probate matter. I believe that the juvenile matter requires confidentiality. The juvenile matter involves actually a few different standards, as Mr. Siders has already pointed out. The first step is fitness, which is a clear and convincing standard which does not have any application to a guardianship. The second then would be best interests.

The complexity here is, and I believe that we are still under the law of the Third District because there have been recently redrawn districts where we're in the Fourth now, but for—I know for a fact there's case law out there for adoption that Mr. Siders already referred to. I don't—I believe it's the *Johnson* case that I had found that basically says that an adoption case in the Third, which I believe would be governed under this because of when the cases started, cannot be filed

and are not appropriate if the fitness has not already been addressed in a prior proceeding.

I believe that argument is well-taken in the guardianship context. You cannot have a guardianship pending when we already have a guardian, which is DCFS. There is one thing if you attempt to remove DCFS as the guardian but that would have to be done in the juvenile case.

The aunt has zero standing whatsoever to intervene or have anything to do with the juvenile matter. She may have the ability pursuant to statute, which is actually laid out in the statute, to respond if the DCFS counsel attempt to ask for the order of protection again. She has basically the sole right to appear at that hearing and nothing further.

I don't believe that the child is available for a guardianship. I don't believe that the probate case is to do anything other than to back door intervene in the juvenile abuse neglect case. I have entered a no-contact order in the abuse neglect case for the aunt and the minor child. Where that goes, I don't really know, but I don't believe that it's appropriate. I don't believe I have jurisdiction. The Motion to Consolidate for those reasons will be denied.

The Court is dismissing the guardianship with leave to refile at the end of the juvenile case, if that ever occurs, assuming the child would be available for guardianship, adoption or what have you, which none of those things may happen. I don't know. That—that may not even ever happen for all I know."

¶ 19    On March 8, 2022, the trial court entered a written order denying Michelle's motion for default judgment, denying her motion to consolidate, and granting DCFS's "motion to dismiss

under 735 ILCS 5/2-619 *** for the reasons provided in oral ruling." The order included language per Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), indicating it was a "final and appealable order" and there was "no just reason for delay, enforcement, or appeal."

¶ 20       This appeal followed.

¶ 21                                    II. ANALYSIS

¶ 22       On appeal, Michelle challenges the trial court's orders (1) denying her motion for a default judgment against DCFS and (2) granting DCFS's oral motion to dismiss the amended petition.

¶ 23                           A. Motion for Default Judgment

¶ 24       Michelle contends the trial court erred in denying her motion for a default judgment after DCFS failed to file a responsive pleading to her amended petition for guardianship. We find no error.

¶ 25       Section 2-1301(d) of the Code provides default judgments "may be entered for want of an appearance, or for failure to plead." 735 ILCS 5/2-1301(d) (West 2020).

¶ 26        The entry of a default judgment is a matter within the discretion of the trial court. *Wilkin Insulation Co. v. Holtz*, 186 Ill. App. 3d 151, 155 (1989). When ruling on a motion for a default judgment, the trial court's primary concern should be its goal to do substantial justice between the parties. *Id.* Factors to be considered for a determination of what constitutes substantial justice include (1) whether the defendant acted with reasonable diligence, (2) whether the defendant has a meritorious defense, (3) the severity of the penalty resulting from the entry of judgment, and (4) the attendant hardship to the plaintiff of denying the motion for judgment. *Id.* A default judgment is a harsh remedy and thus may be appropriate in situations where the defendant has shown a pattern of deliberate delay or a lack of diligence and has ignored the court's commands

or treated them with indifference. *Id.* This court has surmised that a court's discretion to deny a default must be at least as great as the discretion as to whether to set aside a default. *Schoonover v. American Family Insurance Group*, 230 Ill. App. 3d 65, 70 (1992).

¶ 27        Here, we find no abuse of discretion in the trial court's decision to deny Michelle's motion for a default judgment against DCFS. Prior to the filing of an amended petition, DCFS had already appeared in the case. It had filed a notice of appearance, a responsive pleading, and a motion to intervene. It had attended hearings and had been otherwise active and involved in the case. Contrary to Michelle's claim that DCFS had shown a "lack of candor" by failing to provide her with a copy of its original motion to dismiss, we find DCFS had not shown a pattern of deliberate delay, lack of diligence, or ignoring the trial court's commands. See *Wilkin*, 186 Ill. App. 3d at 155. Any failure by DCFS to provide Michelle with a copy of the original motion to dismiss seemed to be an oversight, as the attached certificate of service indicated the same was served upon her by e-mail on May 26, 2021. Because we do not have a transcript or a report of proceedings of the August 9, 2021, hearing, we are unable to discern the veracity of her claim that DCFS lacked "candor" when it withheld a copy of its motion to dismiss until after that hearing.

¶ 28        Further, Michelle filed her amended petition on November 1, 2021, but did not move for a default until March 1, 2022. Michelle has not made any showing that she suffered substantial prejudice by DCFS's failure to file a responsive pleading within 30 days. See *Schoonover*, 230 Ill. App. 3d at 71 (holding the plaintiff delayed in moving for a default and did not demonstrate prejudice caused by the delay). On this record, we determine the trial court did not abuse its discretion in denying Michelle's March 1, 2022, motion for a default judgment.

¶ 29                              B. Motion to Dismiss

¶ 30    Next, Michelle claims the trial court erred in granting DCFS's oral and unnoticed motion to dismiss her amended petition. She claims not only was it an improper oral motion, but it was untimely and without proper notice to the parties of record. We agree that procedurally the court erred in considering DCFS's oral motion to dismiss without notice to the parties but, because we can affirm on any basis in the record, we affirm the court's dismissal. See *Baumgartner v. Greene County State's Attorney's Office*, 2016 IL App (4th) 150035, ¶ 41 (stating an appellate court may affirm the trial court for any reason supported by the record).

¶ 31    At the March 8, 2022, hearing, according to the notice of hearing filed on March 1, 2022, the trial court was to consider Michelle's March 1, 2022, motion for default judgment against DCFS. Apparently, according to the report of proceedings, the court was also to consider Michelle's September 7, 2021, motion to consolidate. After Michelle's counsel argued for consolidation and the court asked to hear DCFS's response thereto, DCFS's counsel stated: "Essentially, there's been no substantial rulings, hearings, or pleadings so, therefore, DCFS would initially make an oral Motion to Dismiss the Amended Petition for [Guardianship]—Based on essentially the arguments raised in the initial Motion to Dismiss which were not reached by the Court when it dismissed under 615. Essentially, that the probate case is an end run around the JA case and the lack of standing." The court granted DCFS's motion to dismiss. The court, in effect, made a decision on the merits of the amended petition without notifying the parties the same would be heard.

¶ 32    Nevertheless, we conclude there is no way, under the current circumstances, Michelle could have pleaded a cause of action for a guardianship of M.M. that would survive a dismissal on the merits. That is, "[t]he determining factor is not the absence of notice but whether

there was any harm or prejudice to the nonmoving party." *In re Rehabilitation of American Mutual Reinsurance Co.*, 238 Ill. App. 3d 1, 11 (1992).

¶ 33        Section 11-5 of the Probate Act (755 ILCS 5/11-5 (West 2020)) governs the trial court's jurisdiction over guardianship of minors. We look to that statute for the court's authority over Michelle's petition.

> "The primary objective in construing a statute is to give effect to the legislature's intent, presuming the legislature did not intend to create absurd, inconvenient or unjust results. [Citation.] Accordingly, courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. [Citation.] The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. [Citation.] When the statutory language is clear, it must be given effect without resort to other tools of interpretation. [Citation.] Moreover, this court has a duty to construe a statute in a manner that upholds its validity and constitutionality if it reasonably can be done. [Citation.] Issues of statutory construction are reviewed *de novo*. [Citation.]" *In re R.L.S.*, 218 Ill. 2d 428, 433 (2006).

¶ 34        By enacting section 11-5(b) of the Probate Act, the legislature invoked a standing requirement for guardianship petitioners. *Id.* at 436. In other words, this section was intended to prevent the trial court from exercising jurisdiction when the petitioner lacks standing. *Id.* at 436.

¶ 35        Section 11-5(b) provides as follows:

> "The court lacks jurisdiction to proceed on a petition for the appointment of a guardian of a minor if it finds that (i) the minor has a living parent, adoptive parent or adjudicated parent, whose parental rights have not been terminated, whose

whereabouts are known, and who is willing and able to make and carry out day-to-day child care decisions concerning the minor, unless: (1) the parent or parents voluntarily relinquished physical custody of the minor; (2) *** the parent or parents fail to object to the appointment at the hearing on the petition; (3) the parent or parents consent to the appointment as evidenced by a written document that has been notarized and dated, or by a personal appearance and consent in open court; or (4) the parent or parents, due to an administrative separation, are unable to give consent to the appointment in person or by a notarized, written document as evidenced by a sworn affidavit submitted by the petitioner describing the parent's or parents' inability to receive notice or give consent; or (ii) *there is a guardian for the minor appointed by a court of competent jurisdiction*." (Emphasis added.) 755 ILCS 5/11-5(b) (West 2020).

¶ 36       The plain language of this section supports DCFS's position that because it was appointed as M.M.'s guardian in the juvenile court case, the trial court here has no jurisdiction over Michelle's petition for a separate request for M.M.'s guardianship. The appointment of DCFS as guardian by a "court of competent jurisdiction" precludes Michelle's action and supports a dismissal of her petition on the merits. The legislature clearly intended to allow for only one court of competent jurisdiction to govern over a minor's guardianship. Thus, allowing Michelle's amended petition to proceed would contravene the legislature's clear intent, which we will not do.

¶ 37                                    III. CONCLUSION

¶ 38       For the reasons stated, we affirm the trial court's judgment.

¶ 39       Affirmed.