FIFTH DIVISION
July 30, 2010

Nos. 1-09-2460 & 1-09-3000 (Cons.)

| | | |
|---|---|---|
| RICHARD PEAL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant and | ) | Cook County. |
| Cross-Appellee, | ) | |
| | ) | |
| v. | ) | No. 06 L 8871 |
| | ) | |
| CINDY LEE, KEN RIZZO, and GLENVIEW | ) | |
| PARK DISTRICT, | ) | |
| | ) | Honorable |
| Defendants-Appellees and | ) | Jennifer Duncan-Brice, |
| Cross-Appellants. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the opinion of the court:

Here we consider the appeal of an ice skating instructor who filed suit for defamation and other causes of action after being fired by his employer. During the course of discovery, plaintiff deliberately deleted thousands of files from his personal computer, using multiple programs with names like File Shredder and Privacy Eraser Pro. This led the trial court to dismiss his lawsuit as a sanction for the profligacy of his electronic spoliation of evidence. We affirm this ruling. Defendants appeal the trial court's refusal to grant attorney fees. We also affirm this ruling of the trial court.

This consolidated appeal arises from an action filed by Richard Peal against his former employer, Glenview Park District (District), two former coworkers, Cindy Lee and Ken Rizzo, and Christopher Krueger. On appeal, Peal contends that: (1) the circuit court abused its discretion in dismissing his first amended complaint; and (2) the circuit court abused its discretion in denying him leave to file a second amended complaint. Defendants, in their appeal,

contend that the circuit court abused its discretion in denying their motion for attorney's fees. For the reasons discussed below, we affirm the circuit court's judgment as to both appeals.

MOTION PRACTICE ON THE PLEADINGS

On August 21, 2006, Peal filed a complaint against the District, Lee, Rizzo (collectively "defendants") and Christopher Krueger.[1] The complaint stated that Peal was employed by the District as an ice skating instructor from March 2000 until February 2006. The complaint contained three counts, with count I alleging defamation of character, count II alleging intentional infliction of emotional distress, and count III alleging violations of the Minimum Wage Law (820 ILCS 105/1 *et seq.* (West 2006)) by the District. Counts I and II referenced events that allegedly occurred in August and October 2005. Defendants subsequently filed various motions to dismiss arguing, *inter alia*, that Peal's defamation claim was barred by the statute of limitations. In support of the motion, the District submitted several typewritten and printed documents which were said to have been authored by Peal in 2004 (2004 Documents). Among the 2004 Documents were various letters containing internal complaints submitted by Peal to the District, containing similar allegations as those in his complaint, as well as a harassment log. Defendants argued that although Peal's complaint alleged that the underlying events occurred in 2005, the 2004 Documents indicated that the events took place in 2004 and his complaint was therefore untimely. Peal responded by denying that he had created the 2004

---

[1] The circuit court granted summary judgment in favor of Christopher Krueger on November 9, 2007, which Peal does not appeal from.

1-09-2460 & 1-09-3000 (Cons.)

Documents.

On July 17, 2007, the circuit court ruled on the motions to dismiss and for sanctions. The circuit court stated that Peal had created a question of fact by denying authoring the 2004 Documents and therefore held that there was no reason to impose sanctions at that point of the proceedings. The circuit court granted the motions to dismiss on other grounds and without prejudice. On July 24, 2007, defendants sent Peal's attorney an electronic discovery preservation letter requesting that Peal be instructed to "preserve any and all computer drives *** as well as all electronically stored files and documents contained on all computer hard drives (including external drives, flash drives, etc.) and all other electronic data that may be discovered."

Peal filed an amended complaint on August 14, 2007, which again pleaded the defamation and wage allegations against the defendants, as well as a civil rights claim under section 1983 of Title 42 of the United States Code (42 U.S.C. §1983 (2000)). Defendants answered and asserted affirmative defenses based upon Peal's allegations being time-barred. Discovery commenced in January 2008, and defendants eventually filed a motion to compel on July 3, 2008, because Peal had not responded to a number of discovery requests. Peal continually failed to comply and was granted several multi-week time extensions, up to and including January 9, 2009.

During this time, defendants also attempted to obtain electronic documents from Peal in connection with his denial that he had authored the 2004 Documents. On October 31, 2008, defendants sent a request to Peal's attorney to obtain a duplicate copy of Peal's computer hard drive and other storage media owned by him. Peal would later deny that he was ever informed

3

1-09-2460 & 1-09-3000 (Cons.)

by his counsel of this or any other related electronic discovery request. Initially, Peal's attorney responded to defendants' requests by offering to arrange dates to allow examination of Peal's computer, however, shortly thereafter Peal's attorney advised defendants that he could not agree to their examination request due to privileged email discussions saved in the hard drive. The defendants submitted a proposed search "protocol" to address those concerns, also suggesting that Peal's attorney be allowed to review any documents for privileged information before producing the documents. This request was also refused by Peal's attorney, this time asserting that examination of the computers would not lead to any relevant information.

MOTION FOR SANCTIONS

On February 20, 2009, the defendants filed a motion to compel, requesting that Peal make his personal computers and electronic storage devices available for examination. The circuit court granted the motion and ordered Peal to make his computers available by March 13, 2009. Peal again failed to comply with the circuit court's order and defendants filed a motion for sanctions. The circuit court denied the motion but entered another order directing Peal to produce his computer by April 10, 2009, stating that Peal would have an opportunity to review any documents before their disclosure.

After an examination of Peal's computer, defendants' computer forensics expert Wolfgang Wilke reported that Peal produced a hard drive that had been manufactured in Taiwan on October 9, 2008, which had an operating system installed on November 23, 2008. The computer also indicated multiple external storage devices had been connected to the system, although Peal had not produced any of them. Wilke also stated that Peal had used seven different data "wiping"

4

programs to permanently delete data from the hard drive, four of which were used on April 9, 2009, just prior the circuit court's order deadline for production of the computer. The use of the programs made it impossible to recover or identify the deleted data or files, however Wilke determined that at least 20,000 files had been destroyed. After discovering this information, defendants filed a motion to dismiss under Supreme Court Rule 219(c) (210 Ill. 2d R. 219(c)) or, in the alternative, to compel production of other computer data storage devices.

Peal's response to the motion and an attached affidavit stated that he replaced his hard drive in October 2008 due to a virus. Another virus required him to reinstall the operating system in November 2008. Due to his problems with computer viruses in the past, Peal claimed that he regularly downloaded "cleaning programs" in an attempt to repair his infected computer. He claimed that he downloaded various programs believing that they were free but did not use any that required him to pay a fee. Peal also claimed that he used external storage devices in the past for school projects, but discarded them afterwards. Finally, Peal added that his complaints to the managers of the District were handwritten and not typed on his computer.

Defendants replied and submitted an additional affidavit from Wilke to address Peal's response and affidavit. Wilke presented a number of findings in his affidavit:

1. There was no evidence that Peal had to reinstall his operating system or that virus activity required him to use data-wiping programs, although Wilke stated that the data-wiping programs could have deleted such evidence if it had existed.

2. Peal's claim that he did not use data-wiping programs requiring payment was contradicted by a payment receipt found on the computer for one such program

5

previously found. Multiple programs were intentionally installed and ran several times, some shortly before the computer was produced.

3. Peal's claim that he discarded external storage devices after using them for school projects was also contradicted by information on his computer. A number of documents related to the underlying action found on the hard drive predated the hard drive's manufacturing date and were copied from an external source. Evidence also showed that at least one drive was connected in November 24, 2008, and then again on April 8, 2009, days prior to the production of the computer to defendants.

4. The programs Peal used to "clean" his computer are primarily used to permanently delete data and files so that they cannot be recovered later, and are marketed as such.

On July 24, 2009, the circuit court held an evidentiary hearing on defendants' motion regarding Peal's alleged misconduct. During the hearing, Peal was first asked if he ever submitted any typewritten complaints to the District. Peal denied doing so, although he responded that he had submitted a "typewritten document, but not a complaint, about an incident. *** There was a typewritten document I wrote complaining about being suspended ***." After being shown one of the 2004 Documents with his signature, Peal stated that it "looks similar to a document that I created and authored" and that the signature on it could be his signature. Despite this, he continued to opine that all such documents were fraudulent. Peal testified that the computer he produced was one he owned since 2003 and that the hard drive inside it was bought from a Best Buy with cash, although he did not have a receipt. Peal also testified he threw away all external hard drives he had used, although he could not explain the evidence indicating that various

6

external drives had been connected to his computer since November 24, 2008. Peal also admitted, contrary to his affidavit, that he did purchase a program to wipe data from his computer to keep it "free of viruses and unwanted junk."

Wilke testified at the hearing as well, relating substantially the same information contained in his previous reports and affidavits. He further stated that certain information relating to various data-wiping programs, such as its installation and last use dates, was unavailable since it appeared the programs had been deleted somehow after being installed or used. Wilke commented on Peal's claims regarding virus activity on the computer, stating that there was no evidence of viruses, his computer already had two anti-virus programs installed, and that it would be "very difficult" to rely on data-wiping software as virus protection due to the nature of computer viruses. Finally, Wilke noted that a data wipe occurred at 11:28 p.m. on April 8, 2009, an external storage device was subsequently plugged into the computer at 11:51 p.m., another data wipe occurred at 12:20 a.m. on April 9, 2009, and then the computer was turned off before being produced to defendants a day later.

On August 18, 2009, the circuit court entered a written order on the spoliation issue granting defendants' motion and dismissing Peal's claims with prejudice, which Peal now timely appeals. The defendants subsequently filed a motion for clarification of the circuit court's order because it had not addressed whether defendants were awarded attorney's fees. The circuit court ultimately entered an order denying attorney's fees, which defendants timely appeal. The two appeals were consolidated into this current appeal.

1-09-2460 & 1-09-3000 (Cons.)

PEAL'S APPEAL

Peal first contends that the trial court abused its discretion in dismissing his amended complaint. We disagree.

The imposition of sanctions is within the discretion of the circuit court, and this court will not disturb a circuit court's decision on appeal absent a clear abuse of that discretion. Nedzvekas v. Fung, 374 Ill. App. 3d 618, 620 (2007). Supreme Court Rule 219(c) provides:

"If a party, or any person at the instance of or in collusion with a party, unreasonably fails to comply with any provision of part E of article II of the rules of this court (Discovery, Requests for Admission, and Pretrial Procedure) or fails to comply with any order entered under these rules, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including, among others, the following:

* * *

(iii) That the offending party be debarred from maintaining any particular claim, counterclaim, third-party complaint, or defense relating to that issue;

***

(v) That, as to claims or defenses asserted in any pleading to which that issue is material, a judgment by default be entered against the offending party or that the offending party's action be dismissed with or without prejudice." 210 Ill. 2d R. 219(c).

8

An order of dismissal with prejudice is a sanction to be invoked only in cases where the noncomplying party's actions show a "deliberate, contumacious or unwarranted disregard of the court's authority." Shimanovsky v. General Motors Corp., 181 Ill. 2d 112, 123 (1998). When this court reviews whether the circuit court abused its discretion in applying a sanction, we must look to the same factors that the circuit court was required to consider in deciding an appropriate sanction. Smith v. P.A.C.E., 323 Ill. App. 3d 1067, 1076 (2001). These factors include: (1) the surprise to the adverse party; (2) the prejudicial effect of the proffered testimony or evidence; (3) the nature of the testimony or evidence; (4) the diligence of the adverse party in seeking discovery; (5) the timeliness of the adverse party's objection to the testimony or evidence; and (6) the good faith of the party offering the testimony or evidence. Adams v. Bath and Body Works, Inc., 358 Ill. App. 3d 387, 395 (2005). Of these factors, no single one is determinative and each case presents a unique factual situation which must be taken into consideration when reviewing the propriety of a particular sanction. Nedzvekas, 374 Ill. App. 3d at 621.

Peal first disagrees with the circuit court's finding that, during the evidentiary hearing on defendants' motion to dismiss, Peal "made various statements that were inconsistent with his affidavit." While Peal's testimony was somewhat consistent (but not necessarily truthful) as to virus activity on his computer, other significant discrepancies exist between Peal's testimony, his affidavit, and information within the record.

For example, Peal's affidavit indicated he downloaded free "cleaning" programs but would not use them if they required a fee. Despite this, a receipt dated February 3, 2009 (a few months after defendants attempted to arrange a date to examine Peal's computer), for Privacy

9

Eraser Pro was discovered by Wilke on Peal's computer. That specific program was run at least once on the day before he produced his computer. After being confronted with this information, Peal claimed that it was simply an oversight on his part.

Peal also claims that he was unaware that his computer was subject to this litigation and therefore was unaware that he should not install and delete certain programs and files. The record indicates, however, that defendants instructed Peal through a electronic discovery preservation letter in July 2007 to "preserve any and all computer drives *** as well as all electronically stored files and documents." In October 31, 2008, Peal was served with discovery requests to examine his computer. An email regarding the examination of Peal's computer was sent to him from his attorney on November 17, 2008, which Peal admitted to receiving. The parties also engaged in discussions in an attempt to arrange a date to examine Peal's computer from October 2008 until February 2009 when defendants filed a motion to compel, which was granted. Subsequent to this, multiple data-wiping programs with clever names like File Shredder, Eraser, CCleaner, Privacy Eraser Pro, Registry Easy, and Wise Registry Cleaner, were still executed. Peal then failed to comply with the circuit court's first order directing him to produce his computer. After the circuit court ordered him to produce his computer again, Peal made an unscheduled visit with defendant's expert Wilke on April 6, 2009, to discuss the production of his computer. After the visit, Peal continued to run multiple data-wiping programs up until the day before he finally made his computer available for examination. Peal's claim of ignorance here is completely disingenuous. Peal's claim that he would only use external storage devices for school projects and then discard the devices afterwards was also contradicted by the

10

evidence. Wilke found evidence that multiple storage devices were attached on November 24, 2008 (after the operating system was installed on the new hard drive), and that at least one was reattached on April 8, 2009, just days before the computer was produced. Multiple documents related to the underlying action were also found on Peal's computer which predated the hard drive manufacture date. Wilke found no evidence that they were received by email and thus concluded they were likely copied from an external drive. This again leads us to conclude that Peal's testimony and argument are factually baseless, legally meritless and worthy of the sanctions imposed by the trial court.

Despite the patently untruthful testimony and argument alluded to above, we are bound to consider six discrete factors to determine whether an abuse of discretion occurred: surprise, prejudice, the type of evidence at issue, diligence, timeliness of objection, and good faith.

Peal argues that because he has denied authoring the 2004 Documents, defendants cannot claim surprise that the documents sought were not found on his computer. Peal's denial, however, is the very reason why his hard drives were sought. To argue that it is no surprise documents are not found based on mere denial, when they may have in fact been destroyed, boils down to no more than a fallacious argument *circulus in probando*. More to the point under these facts, the real surprise is that a litigant would have the audacity to discard his old hard drive and delete tens of thousands of electronic files with sophisticated data-wiping programs and then cry foul that his opponents should not be surprised. This sounds like the story of the children who murdered their parents and then pled for sympathy as orphans.

Peal also suggests defendants cannot claim prejudice because they had other avenues to

11

establish that Peal authored the documents at issue. In other words, Peal suggests that there were other ways to prove that he lied about writing and destroyed the documents in question. This nervy argument is devoid of merit. If the 2004 Documents were authored by Peal, his underlying action would have been undisputedly time-barred. This could have been proven through an examination of his previous hard drive, external drives, or data he may have transferred to his new hard drive. Peal, however, not only discarded his old hard drive, he failed to produce the external storage devices used to transfer data to his new hard drive, and then data-wiped his new hard drive multiple times before producing it. The proof here is abundant that Peal sought to cover up his electronic tracks by subterfuge and his argument on appeal is pure pettifoggery.

Peal next argues defendants were not diligent in discovery. This is another hollow argument, since the record indicates that Peal was sent a preservation letter on July 24, 2007. Shortly after discovery commenced in January 2008, defendants sought electronic versions of the 2004 Documents through documents requests and requests to admit. Peal failed to comply with a number of these discovery requests for nearly a year. While waiting for Peal to comply, defendants requested Peal's computer and external storage devices in October 2008. Afterwards, Peal continued to delay his compliance with any discovery requests or court orders directing him to comply. Under these facts and circumstances, it is apparent that the defendants' efforts were sufficiently diligent while Peal was diligent only in his effort to destroy evidence that could have destroyed his claims in court.

Peal's argument that defendants' objection was untimely is also unsupported by the record, since defendants filed their motion to dismiss only a month after Peal produced his

computer and shortly after learning that Peal apparently discarded his old hard drive, data-wiped his current hard drive multiple times, and failed to produce external storage devices connected to his computer.

Finally, Peal claims that he did not act in bad faith. As the English might say, this argument surely takes the biscuit. As the circuit court noted in its written order, plaintiff was notified in an email on November 17, 2008, that his computer was subject to the litigation. On February 27, 2009, the circuit court ordered Peal to produce his computer by March 13, 2009. Peal did not comply. It was not until April 10, 2009, that Peal produced his computer. But before producing the computer, it is apparent that he was busy destroying evidence from it, including the night before he turned the computer over to the defendants. He also apparently disposed of any and all external drives he had ever used. This strikes the court as the personification of bad faith.

Having carefully reviewed the record before us, we find absolutely no evidence that the trial court abused its discretion here. Peal insists that the circuit court failed to consider the six factor test discussed above because it did not directly address them in its order. We find this argument to be unavailing. We have upheld sanctions under Rule 219(c) even where a circuit court has failed to specifically set out any of its findings. See Glover v. Barbosa, 344 Ill. App. 3d 58, 63 (2003) ("[A] court's failure to set out the grounds for sanctions is not *per se* reversible error"). The circuit court here, while it did not specifically address the six factors outlined above, nevertheless issued a detailed written order elucidating the relevant facts in determining its sanction. A review of that order and the record shows that Peal's actions were a deliberate,

13

contumacious and unwarranted disregard of the court's authority. In consideration of the six factors discussed above, we find that the sanction issued here was well within the discretion of the circuit court.

Peal next contends that the circuit court erred in denying his March 31, 2009, motion for leave to file a second amended complaint. We disagree.

Illinois has a liberal policy of allowing the amendment of pleadings, but this right is not unlimited. Lee v. Chicago Transit Authority, 152 Ill. 2d 432, 467 (1992). Whether to allow an amendment to pleadings is within the sound discretion of the trial court, whose determination will not be disturbed on appeal in the absence of an abuse of discretion. Village of Wadsworth v. Kerton, 311 Ill. App. 3d 829, 842 (2000). The factors in deciding whether a trial court abused its discretion on a motion to amend a pleading include: (1) whether the amendment would cure a defect in the pleading; (2) whether the proposed amendment was timely; (3) whether the opposition would be prejudiced or surprised by the amendment; and (4) whether there were earlier opportunities to amend the pleading. Lee, 152 Ill.2d at 467-68.

Peal first argues that the trial court abused its discretion in denying Peal leave to add James Weides, a manager at the District, for a new defamation count. He argues that the first time he discovered that Weides allegedly said in 2005, "Here comes Chester," in reference to "Chester the Molester,"[2] was in January 2009 when Jeff Whelan, a former colleague of Peal's,

---

[2] "Chester the Molester" was a comic strip appearing in the adult magazine Hustler, the premise of which was a man, Chester, that was interested in molesting women.

was deposed.

The statute of limitations to file a defamation claim is one year. See 735 ILCS 5/13-201 (West 2004). Peal argues that the "discovery rule" tolled the statute of limitations. Under the discovery rule, the limitations period would not begin to run until such time a person knows, or reasonably should have known, of his or her injury and that such injury was wrongfully caused. See Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc., 61 Ill. 2d 129, 136 (1975) (applying discovery rule to plaintiff's claim where defaming information was freely available only to subscribers of defendant credit reporting agency's service). Although there exists a degree of uncertainty as to when the discovery rule should apply in defamation cases, this court has acknowledged its use and stated that it should not be applied "unless the publication was hidden, inherently undiscoverable, or inherently unknowable." Blair v. Nevada Landing Partnership, 369 Ill. App. 3d 318, 326 (2006).

In the instant case, we find that Peal's claim against Weides was properly dismissed as time-barred. Peal essentially argues that the limitations period should be tolled because he did not know the identity of each person who made a defamatory statement about him. This type of argument has already been rejected by this court. See Guehard v. Jabaay, 65 Ill. App. 3d 255, 258 (1978) (rejecting plaintiff's argument that discovery rule applies when injury was known but the identities of persons causing such injury were not known). The record shows that Peal was aware that people had made defamatory statements regarding him at least by 2005, including the reference to him as "Chester." Because of this, Peal knew he had an injury and a cause of action in 2005, and at that point the limitations period began to run and the burden fell upon Peal to

15

inquire further. See Castello v. Kalis, 352 Ill. App. 3d 736, 745 (2004). Plaintiff's own negligence in failing to comprehensively investigate his cause of action, including his failure to timely discuss the matter with Whelan, whom Peal himself had often spoken to and relied on to investigate this matter, was his own doing.

Peal next argues that the trial court abused its discretion in denying Peal leave to add a claim against Cindy Lee. He alleged that between 2000 and 2003, Lee called Peal a "child molester" and a "pervert" in the presence of Andria Kelling and other employees of the District. Peal claims he did not learn of this until he spoke to Kelling in August 2008 and therefore the limitations period should be tolled.

Peal's argument here is baseless. In 2006, Peal claimed that Lee had made a number of defamatory statements against him (which Peal listed non-exclusively) and solicited children as "agents" to defame and harass him in 2005. His amended complaint, filed in 2007, specifically claimed that Lee's alleged statements that Peal was a "child molester or pedophile" were false. Other filings by Peal and statements by others in the record alleged that Lee made a number of defamatory statements about Peal. For example, a testimonial affidavit by Carol Burgeson provided in February 2008 stated that she had heard Lee refer to Peal as a "pedophile" on several occasions. Under these circumstances, we find that Peal possessed "sufficient information concerning his injury" such that he was put on inquiry to determine whether actionable conduct was involved. See Castello, 352 Ill. App. 3d at 745, quoting Knox College v. Celotex Corp., 88 Ill. 2d 407, 416(1981). Peal failed to timely investigate and file these claims against Lee, and therefore the circuit court properly found that they were time-barred.

16

Peal finally argues that the circuit court erred in denying him leave to file a claim against Dorie Cascio, his former supervisor. Peal alleged a violation of his civil rights under section 1983 of Title 42 of the United States Code. See 42 U.S.C. §1983 (2000). Peal alleged that after he was terminated from the District in February 2006, he was hired as a skating coach at the Barrington Ice Arena. Between March 7 and 17, 2006, Peal filed claims with the Cook County Commission on Human Rights (CCCHR) and the Equal Employment Opportunity Commission (EEOC). Peal was then terminated by the Barrington Ice Arena on March 17, 2006. Peal now argues that Cascio caused his termination after speaking to Judy Brahin, the director of the arena, in retaliation for the charges he filed with the CCCHR and EEOC. Section 1983 claims in Illinois are subject to a two-year statute of limitations. Northen v. Chicago, 126 F.2d 1024, 1026 (7th Cir. 1997). While federal law will determine when a cause of action accrues, Illinois law determines whether the statute of limitations has been tolled. McGee v. Snyder, 326 Ill. App. 3d 343, 352 (2001). Peal's injury occurred in March 17, 2006, and therefore he had until March 17, 2008, to timely file his claim. See Kelly v. City of Chicago, 4 F.3d 509, 511 (7th Cir.1993). Peal did not file this claim until March 31, 2009.

Peal claims that the limitations period should be tolled because he did not learn about the nature of Cascio's alleged retaliation until Whelan's deposition in January 2009. Peal, however, had alleged in both complaints that Cascio was "responsible for Plaintiff's termination by the Barrington Arena after he had filed discrimination charges against the Glenview Park District." A review of both amended complaints indicates that the two are nearly identical except that the second amended complaint states that Brahin "received information" from Cascio before Peal's

17

termination. In addition to this, the very deposition that Peal relies on in arguing that the limitations period was tolled indicates that Peal believed he was being retaliated against as soon as three weeks after his termination from the Barrington Ice Arena. The statute of limitations in section 1983 claims accrues when one knows or should have known that his constitutional rights have been violated. Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir.1994). The record makes it clear that Peal knew, or should have known, of any potential retaliation by Cascio long before he claims to have learned of it in January 2009. We see no reason why the statute of limitations should have been tolled here and Peal does not offer any reasons arguing otherwise. Peal's claim, therefore, was time-barred.

DEFENDANTS' APPEAL FOR FEES

Next, defendants appeal the circuit court's order denying attorney's fees. In their May 22, 2009, motion to dismiss, defendants requested that they be awarded attorney's fees pursuant to Illinois Supreme Court Rule 219(c) (210 Ill. 2d R. 219(c)). As already stated above, the imposition of sanctions is within the discretion of the circuit court, and this court will not disturb a circuit court's decision on appeal absent a clear abuse of that discretion. Nedzvekas, 374 Ill. App. 3d at 620. An abuse of discretion only occurs when "no reasonable person would rule as the circuit court ruled." Aguirre v. City of Chicago, 382 Ill. App. 3d 89, 98 (2008). Generally speaking, the purpose of Rule 219 is to "coerce compliance with discovery rules and orders, not to punish the dilatory party." Shimanovsky, 181 Ill. 2d at 123.

Defendants, in their brief, engage in a lengthy discussion of Peal's misconduct throughout the underlying litigation. At no time, however, do defendants explain how monetary sanctions

18

would begin to fulfill the purpose of Rule 219(c). For his misconduct, Peal has already received a severe sanction in having his complaint dismissed with prejudice. Having carefully reviewed the record, it is apparent to us that the circuit court believed that dismissing Peal's claim was a sufficient sanction. To grant attorney's fees under Rule 219(c) after doing so would be no more than a sanction in surplus, and serve only to punish Peal unnecessarily. See Nunez v. Horwitz, 205 Ill. App. 3d 976, 984-83 (affirming denial of attorney's fees under section 219(c) where sanctions already imposed were "sufficiently severe"); see also King v. American Food Equipment Co., 160 Ill. App. 3d 898, 913 (1987) (affirming denial of monetary damages because dismissal of action was a "severe enough sanction").

A number of cases defendants cite to support their argument are United States District Court cases that do not involve Rule 219(c), and are therefore inapplicable and unpersuasive. See People ex rel. Birkett v. City of Chicago, 292 Ill. App. 3d 745, 755 (1997). The two Illinois cases defendants do cite in support of attorney's fees, Koppel v. Michael, 374 Ill. App. 3d 998 (2007), and Smith v. Gleash, 325 Ill. App. 3d 79 (2001), are cases where this court reviewed a grant of attorney's fees as opposed to a denial, as was the case here. Those cases, however, do not stand for the proposition that attorney's fees must be granted, but only that they *may* be granted, a decision which we review under the heightened abuse of discretion standard. In other words, we are not finding here that this court would have similarly denied sanctions or reversed a grant of attorney's fees, but instead only find that a reasonable person could have ruled as the circuit court did. Accordingly, we find that it was not an abuse of discretion for the circuit court to deny defendants' request for attorney's fees under Rule 219(c), in light of the sanctions that had

1-09-2460 & 1-09-3000 (Cons.)

already been imposed.

Defendants also argue that the circuit court should have awarded fees under Illinois Supreme Court Rule 137 (155 Ill. 2d R. 137). Defendants' May 22, 2009, motion did not request fees pursuant to Rule 137 and therefore the circuit court was not required to and did not address the argument. Arguments made for the first time on appeal are deemed forfeited (Marshall v. Burger King Corp., 222 Ill. 2d 422, 430-31 (2006)), including requests for Rule 137 sanctions (Brazas v. Property Tax Appeal Board, 309 Ill. App. 3d 520, 531 (1999)). Accordingly, we decline to address defendants' argument.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

TOOMIN, P.J., and FITZGERALD SMITH, J., concur.

1-09-2460 & 1-09-3000 (Cons.)

| | |
|---|---|
| Please Use Following Form:<br><br>Complete TITLE of Case | RICHARD PEAL,<br><br>                                          Plaintiff-Appellant,<br>    v.<br><br>CINDY LEE, KEN RIZZO, and GLENVIEW PARK DISTRICT,<br><br>                                          Defendants-Appellants. |
| Docket No.<br><br>COURT<br><br><br>Opinion Filed | No. 1-09-2460 & 1-09-3000 (Cons.)<br>Appellate Court of Illinois<br>First District, FIFTH Division<br>July 30, 2010<br>(Give month, day and year) |
| JUSTICES | JUSTICE LAVIN delivered the opinion of the court:<br><br>Toomin, P.J., and Fitzgerald Smith               concur<br>                                          dissent[s]<br><br>Lower Court and Trial Judge(s) in form indicated in the margin: |
| APPEAL from the Circuit Ct. of Cook County, Criminal Div. | The Honorable    Jennifer Duncan-Brice, Judge Presiding.<br><br><br>Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Attorneys for Plaintiff-**Appellant**:    Foley & Lardner, LLP<br>Richard Peal                                Miki Vucic Tesija<br>                                          Katherine E. Licup<br>                                          321 N. Clark St. Suite 2800<br>                                          Chicago, IL 60654<br>                                          312.832.4500<br><br>Attorneys for **Defendants-Appellees:**    Laner, Muchin, Dombrow, Becker, Levin, & Tominberg, Ltd.<br>Ken Rizzo, Cindy Lee, Glenview Park    Joseph Gagliardo, Gregory James, Jr., Jeffrey Fowler, David Moore<br>District                                  515 N. State St., Suite 2800.<br>                                          Chicago, IL 60654<br>                                          312.467.9800<br>                                          Of Counsel<br>                                          Edward Dutton<br>                                          Park District Risk Management Agency<br>                                          P.O. Box 4320<br>                                          Wheaton, IL 60189 |