# Illinois Official Reports

## Appellate Court

*Locasto v. City of Chicago*, 2014 IL App (1st) 113576

| | |
|---|---|
| Appellate Court Caption | JOSEPH W. LOCASTO, Plaintiff-Appellant and Cross-Appellee, v. THE CITY OF CHICAGO, a Municipal Corporation, JOHN S. McKILLOP, Director of Training/EMS, ARF ABDELLATIF, MONICA PORTER, and ANTHONY LONGINI, Defendants-Appellees and Cross-Appellants. |
| District & No. | First District, Third Division<br>Docket Nos. 1-11-3576, 1-12-0608, 1-12-0705 cons. |
| Filed<br>Rehearing denied | February 11, 2014<br>February 26, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from the allegedly excessive physical training plaintiff received in connection with his new job as a paramedic for defendant city, the trial court's entry of a judgment of default against defendants as a sanction for their dilatory practices with respect to the court's discovery orders was reversed and the cause was remanded for further proceedings, since the trial court entered the default without first considering intermediate sanctions and giving a warning that default was a possibility, and the record showed that although defendants were slow in responding to discovery requests, blatant disregard for the trial court's authority was not exhibited, and in one instance, plaintiff played a part in the delay. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-5400; the Hon. James D. Egan, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Jeffrey C. Hart, of Segal McCambridge Singer & Mahoney, Ltd., of Novi, Michigan, for appellant. |
| | |
| | Stephen R. Patton, Corporation Counsel, of Chicago, for appellees. |
| | |
| Panel | PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion. |
| | Justices Neville and Pucinski concurred in the judgment and opinion. |

## OPINION

¶ 1    For years lawyers have complained about how rarely trial judges mete out sanctions for dilatory discovery practices. This reluctance, they say, has contributed to an environment in which some lawyers (and parties, too) flout court rules and court orders because the chances of unpleasant consequences tend to be so low. But that is not what happened here.

¶ 2    Plaintiff Joseph Locasto asks us to award him an additional $1 million in damages for emotional suffering on top of the nearly $2 million judgment by default entered as a discovery sanction against the City of Chicago and four city employees. The sanction was sought after defendants failed to meet several discovery deadlines. Defendants cross-appeal, arguing the trial court abused its discretion by entering the default without considering the possibility of a less severe sanction.

¶ 3    The trial court took control of discovery early on. Defendants, however, dragged their feet on discovery, a relatively common transgression. After Locasto's efforts to obtain the discovery without court intervention went nowhere, he moved for a default against defendants as a sanction for failing to fulfill their discovery obligations. The trial court granted the default. Nothing in the record indicates that, before entering the default, the trial court considered a lenient alternative to coax cooperation or warned defendants of default as a possible sanction. We hold that the trial court must do both–weigh the efficacy of less drastic alternatives and warn–before entering the most damaging sanction available. Therefore, we vacate the judgment of default and remand for further proceedings in the trial court.

¶ 4                                BACKGROUND

¶ 5    The City of Chicago hired Joseph Locasto as a paramedic candidate. On May 6 and 7, 2008, the healthy 31-year-old attended the first two days of training at the fire academy. On both days, Locasto and his fellow candidates performed 10 to 12 hours of calisthenics, running, and other strenuous physical exercises. According to Locasto, fire academy instructors verbally coerced, intimidated, and hazed the candidates, and refused to let anyone drink water

or other fluids, except during a one-hour lunch break and a single one-minute water break toward the end of each day.

¶ 6     After both days of training, Locasto felt extreme soreness in his legs. On the evening of the second day, his legs began to swell. The next morning, Locasto noticed he had tea-colored urine, which, naturally, caused him alarm. He called his lead academy instructor who told him to go to the emergency room. At the hospital, a doctor informed Locasto he had rhabdomyolysis, a breakdown of muscle tissue which often leads to acute kidney damage, and compartment syndrome, a potentially life-threatening condition due to increased pressure within the muscles. Locasto underwent emergency surgery and spent 30 days in the intensive care unit. Locasto's physicians blamed his health problems on the extensive workouts and deprivation of water or liquids at the fire academy.

¶ 7     On May 7, 2009, Locasto filed a six count complaint against the City of Chicago (the City), director of fire academy EMS training John McKillop, and fire academy instructors Arf Abdellatif, Monica Porter, and Anthony Longini. (Plaintiff named another instructor, Daryl Johnson, but voluntarily dismissed him.) The first four counts were against the City and the last two counts were against the individual defendants.

¶ 8                           Default for Failure to Answer

¶ 9     On October 15, 2009, the City filed a motion to dismiss under section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)), arguing Locasto's claims were precluded by the Illinois Pension Code (40 ILCS 5/1-101 *et seq.* (West 2010)). The Pension Code prohibits employee suits against employers and fellow employees absent allegations of a specific intent to injure**.** The trial court denied the motion to dismiss, vacated all technical defaults, and ordered defendants to answer within 30 days. Defendants failed to answer the complaint, and Locasto moved for a default. Following a hearing on the motion, the trial court gave defendants more time to plead to the complaint and ordered the parties to complete discovery within 90 days. Again, defendants failed to answer, and again Locasto moved for a default. Then, instead of answering, defendants filed a second motion to dismiss that was nearly identical to the first motion. This time, Locasto moved to strike the motion to dismiss and asked for an order of default as a sanction under Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994) on the ground that defendants' motion raised the same issues as their earlier motion to dismiss. The trial court agreed and granted the default and set the matter for prove-up. Thereafter, over Locasto's objection, the trial judge granted defendant's motion to vacate the default and ordered defendants to pay Locasto $3,500 in attorney fees and costs within 60 days. The next day, defendants answered and the case proceeded to the discovery phase.

¶ 10                          Default for Discovery Delays

¶ 11    In March 2011, Locasto issued discovery requests. In April, a case management order fixed May 24 for completion of written discovery, and June 21 for completion of oral discovery, with treating physicians' depositions to be taken before the case management conference set for July 22.

¶ 12    On July 15, 2011, Locasto filed his first motion to compel and asked for sanctions under Illinois Supreme Court Rule 219(c)(v) (eff. July 1, 2002). Rule 219(c)(v) allows the entry of the most potent sanction–dismissal against a plaintiff or a judgment by default against a defendant–for unreasonably failing to comply with discovery rules or court orders. He attached to the motion a letter from his attorney to the City's attorney asking about the whereabouts of the money previously ordered to be paid and several e-mails from his attorney to the City's attorney from April, May, and July 2011, asking about the outstanding discovery.

¶ 13    On July 21, 2011, the day before the case management conference, Locasto requested the depositions of McKillop, Abdellatif, Porter, Longini, and Johnson on August 2 and 3, 2011.

¶ 14    On July 22, the trial judge granted Locasto's motion to compel and entered an order of default "against all defendants for repeated discovery violations." Although the individual defendants had answered the interrogatories the day before, the answers were incomplete. Defendants were given one week to complete all written discovery, and the matter was continued until August 3. On July 28, the City responded to Locasto's requests to admit.

¶ 15    By August 3, defendants still had not fully answered the interrogatories. Although Locasto asked for and was granted leave to amend the interrogatories, the trial court continued the default. On August 18, Locasto amended three interrogatories. A few days later, Locasto requested the deposition of fire department employee Janet Contursi, who had signed defendants' affidavit of completeness regarding document production. Ill. S. Ct. R. 214 (eff. Jan. 1, 1996). Locasto also issued a second request for the depositions of McKillop, Longini, Porter, and Abdellatif, along with a rider for documents. In late August, the individual defendants served amended answers to some, but not all, the open interrogatories.

¶ 16    On September 1, Locasto moved to transfer the case for default prove-up, alleging defendants had been defaulted three or more times for continued discovery violations and had yet to fully answer the interrogatories. Before the next hearing, on September 16, the individual defendants completed their responses to the interrogatories. But the trial judge found all defendants remained in default for continued discovery violations and ordered Contursi and Monica Porter be deposed within 30 days. The matter was continued until October 21 for case management, status of discovery, and the motion to transfer for default prove-up. On September 24, Locasto issued a second request for Contursi's deposition and a third request for Porter's deposition.

¶ 17    On October 21, the court again found defendants in default for continued discovery violations and transferred the case for prove-up. Defendants moved to vacate the default, claiming they had complied with all discovery requests, including the depositions, except for Contursi's deposition. As to Contursi, defendants claimed "Locasto has chosen not to proceed on any of the dates she has been made available," and his attorney never responded to e-mails and a letter offering to present Contursi on several dates in September and October.

¶ 18    Locasto countered that McKillop, Longini, and Abdellatif had testified about general orders used at the fire academy that had not been produced despite his request for them. He also noted that his attorney drove from Michigan to Chicago on two occasions to attend scheduled depositions of Contursi, only to be stood up on both dates. And, he offered to depose Contursi on October 21, before the entry of the "final" default and transfer for prove-up.

¶ 19 The prove-up hearing was held on November 3, before a judge other than the judge who entered the default. Defendants renewed their motion to vacate the default, which was denied, although the judge explained, "[he] would allow it to be filed before [the other judge], who has a better history of the case." Locasto received an award of almost $2 million in damages: $152,788 for medical bills paid by Locasto's insurance, $1,341,127 in lost wages and pension, $500,000 for pain and suffering, and $1,996 in court costs. The judge denied damages for emotional injuries.

¶ 20 Defendants filed a postjudgment motion to vacate the default judgment. On November 19, that motion was continued and the parties ordered to schedule Contursi's deposition.

¶ 21 Locasto timely appealed the damages award, arguing the trial court erred in refusing to award $1 million for emotional damages based on the unrebutted testimony he presented at the prove-up hearing. Defendants moved to dismiss the appeal for lack of jurisdiction or, in the alternative, for an extension of time to file a notice of appeal. The trial court, meanwhile, stayed hearing the motion to vacate until the appellate court ruled on defendants' motion to dismiss the appeal.

¶ 22 The appellate court ruled for defendants and dismissed the appeal for want of jurisdiction. But, the Illinois Supreme Court entered a supervisory order directing the appellate court to vacate the dismissal and proceed with the appeal. *Locasto v. City of Chicago*, No. 114193 (Sept. 26, 2012). Defendants requested an extension of time to file a notice of appeal, which was granted. The appellate court consolidated the appeals both sides had taken from various orders.

¶ 23                                              ANALYSIS

¶ 24 Locasto argues the trial court erred in refusing to award him an additional $1 million in damages for pain, suffering and emotional injury, because evidence supporting that award was not rebutted by defendants. Defendants argue the trial court erred by holding them in default as a discovery sanction without first exploring and applying a less onerous sanction. Alternatively, defendants assert if the default order is not vacated, the judgment for Locasto is precluded by the Illinois Pension Code and the damages award was not supported by the evidence. Because we find the trial court erred in entering default as a discovery sanction, we only address that issue.

¶ 25 For a party trying to obtain legitimate discovery, dealing with disruptive or manipulative conduct can be demoralizing and distracting, and, certainly, has the potential to increase expenses. Also, it often leads to increased tensions and a decay of civility between lawyers. Indeed, unless and until trial judges clamp down on discovery abuses–be it engaging in stonewalling, foot dragging, obfuscation, or any other shenanigans–little incentive exists for the already recalcitrant party to comply.

¶ 26 Illinois Supreme Court Rule 219 (eff. July 1, 2002) addresses the consequences of a party's refusing or failing to comply with rules or court orders regarding discovery. Rule 219 affords a trial judge broad discretion in fashioning a sanction appropriate under the specific circumstances. Generally, a sanction will not be reversed absent an abuse of discretion.

*Cirrincione v. Westminster Gardens Ltd. Partnership*, 352 Ill. App. 3d 755, 761 (2004). In determining whether the trial court abused its discretion, a reviewing court looks to the same factors that the trial court considers in deciding on a constructive sanction: (1) surprise to the adverse party; (2) the prejudicial effect of the proffered evidence; (3) the nature of evidence being sought; (4) diligence of the adverse party in seeking discovery; (5) timeliness of the adverse party's objection to the testimony or evidence; and (6) the good faith of the party offering the evidence. See *Peal v. Lee*, 403 Ill. App. 3d 197, 203 (2010). Of these factors, no single factor controls and each situation presents a unique factual scenario that bears on the propriety of a particular sanction. *Smith v. P.A.C.E.*, 323 Ill. App. 3d 1067, 1076 (2001).

¶ 27 The trial court may enter an array of sanctions as are just against "any party who unreasonably refuses to comply with any provisions of [the] court's discovery rules or any order entered pursuant to these rules." *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 120 (1998). Sanctions have a dual purpose: to combat abuses of the discovery process and maintain the integrity of the court system. *P.A.C.E.*, 323 Ill. App. 3d at 1075. A sanction should be tailored to promote discovery, not punish a dilatory party. *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 68 (1995). To the maximum extent that is practicable, sanctions should be customized to address the nature and extent of the harm while prescribing a cure to the specific offense. One way for trial judges to put the brakes on this kind of nonsense and push compliance is to describe the sanction that may be imposed for noncompliance in a court order, and then follow through with the sanction should the conduct so warrant. Thereafter, an even more intrusive sanction should be imposed for continued noncompliance. How long this goes on depends on the situation, but, at least, the recalcitrant party knows the repercussions of his, her, or its conduct.

¶ 28 The most onerous of all sanctions is a judgment by default on "claims or defenses asserted in any pleading to which that issue is material" or dismissal of the offending party's action, with or without prejudice. Ill. S. Ct. R. 219(c)(v) (eff. July 1, 2002).

¶ 29 Defendants' delays in responding to Locasto's discovery requests apparently (and appropriately) earned the opprobrium of the trial court. Defendants treated the deadlines as if they were optional and not firm obligations. Moreover, defendants' dilatory responses caused prejudice by preventing Locasto from pressing forward with his case. Indeed, defendants appear to concede that their repeated discovery violations warrant some type of sanction. They contend, however, that the trial court abused its discretion by holding them in default before less drastic sanctions had been attempted and determined to be ineffective.

¶ 30 At Locasto's urging, the trial court granted default under Illinois Supreme Court Rule 219(c)(v) (eff. July 1, 2002), as the sanction of choice for defendants' failure to provide discovery responses. Defendants argue the trial court should have leveled a less lethal sanction, especially since the issue had not been previously presented to the trial court. Defendants also contend that at the time of the prove-up, only Janet Contursi's deposition remained, and Locasto refused to depose her because he wanted to proceed with the prove-up. Defendants ask that we vacate the judgment of default as frustrating the primary goal of Rule 219 sanctions, namely, to facilitate adherence with court discovery rules and discovery orders, not punishment.

¶ 31 To refute defendants' arguments, Locasto maintains that after the trial court entered the July 22 order, the case was continued on four occasions to give defendants an opportunity to comply. Not until October 21, 2011, with discovery from defendants still incomplete, did the trial court transfer the case for prove-up. The multiple continuances of the July 22 order, according to Locasto, constitute a progressive application of the trial court's discovery powers to compel full compliance.

¶ 32 Locasto also considers relevant defendants' untimely filing of their answer to the complaint and the subsequent entry of a default as a sanction under Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994) for bringing a second motion to dismiss virtually identical to the first. Although later vacated, Locasto contends this illustrates a pattern of delay and refusal to follow court orders. And, regarding Contursi's deposition, Locasto asserts Cortursi did not appear at scheduled times, and defendants got serious about a date for her deposition only after the trial court set the default for prove-up.

¶ 33 We disagree with Locasto's contention that a Rule 137 sanction should be considered by a trial court when ruling on a Rule 219 sanction. Although Supreme Court Rules 137 and 219 have similarities in terms of remedies, they serve different purposes and embrace different dynamics and facets of litigation. Rule 137 concerns the pleadings stage of litigation and is intended to be punitive in nature, while Rule 219 specifies the consequences of a litigant's abuse or disregard of the discovery rules and discovery-related court orders, and is coercive in nature. Given these differences, it would be unfair to consider Rule 137 sanctions in proceedings under Rule 219 as it would the reverse, to consider Rule 219 sanctions in proceedings under Rule 137. See *In re Marriage of Lai*, 253 Ill. App. 3d 111, 118 (1993) (inappropriate to order sanctions for discovery violations based on willful disregard of court orders that are unrelated to discovery).

¶ 34 While we deplore all dilatory actions, we must respect the distinctions embodied in the rules themselves. Nothing in either rule or committee comments suggests that sanctions under one rule should be taken into account in determining sanctions under the other rule. In any event, at the time the trial court heard the Rule 219 motion for sanctions, it already had vacated the Rule 137 sanction, and, thus, the earlier default provided nothing of value.

¶ 35 Turning to the ultimate sanction, which is set out in Illinois Supreme Court Rule 219(c)(v) (eff. July 1, 2002), default or dismissal, we note both bring about a premature end without adjudication on the merits. Hence, a court should reserve an order of default or dismissal for the most recalcitrant and unyielding parties. *Shimanovsky*, 181 Ill. 2d at 123. For this reason, before deploying a Rule 219(c)(v) sanction, the trial court should already have considered the six factors listed above and concluded that sanctions against the noncomplying party are warranted. Then, the court should weigh four additional factors in deciding whether the time has come to impose default or dismissal: (1) the degree of the party's personal responsibility for the noncompliance, (2) the level of cooperation and compliance with previous discovery and sanction orders, (3) whether less coercive measures remain available or, based on the record, would be futile; and (4) whether the recalcitrant party had been warned, orally or in writing, about the possibility of entry of an order of default or dismissal. See *Poulis v. State*

- 7 -

*Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (relying on several of these factors in adopting a six-factor test for determining the propriety of a default judgment).

¶ 36    With regard to the party's personal responsibility, if the court determines that more of the responsibility for noncompliance lies with the lawyer, the court should assess the effect of upping the ante on the lawyer before lowering the boom on the client. On the other hand, if the imposition of various lesser sanctions, such as barring the use of documents or witnesses, have been tried and not worked, then default or dismissal might be called for. The next factor, the level of cooperation and compliance, indicates the amount of progress the recalcitrant party has made; the lack of any progress makes the ultimate sanction more likely. The third factor is the viability of additional, intermediate sanctions, and the likelihood an alternative would have an impact. In other words, is there something short of dismissal or default that can get results or has it come to the point that less onerous sanctions would be counterproductive. Finally, the trial judge must have alerted the recalcitrant party, orally or in writing, of the possibility that default or dismissal may be appropriate.

¶ 37    To allow a party to defy a discovery order without facing sanctions can be likened to a dog without teeth–all bark and no bite. A pattern of dilatoriness should not be tolerated, as it hurts the opposing party and is a burden on the court system. In entering a sanction for discovery abuses, a trial court wants to ensure compliance with discovery and advance the litigation, not punish the offending party. In addition, the trial court seeks to deter behavior that avoids, delays, evades, or otherwise impedes the efficient, cost-effective, timely and collaborative exchange of discovery. It would be a rare case in which the trial court could not formulate increasingly severe sanctions.

¶ 38    Looking solely at the discovery stage of the litigation, the record shows defendants slowly responded to Locasto's discovery requests but did not exhibit blatant disregard for the court's authority. In April 2011, the case management order required written discovery to be completed by May 24, and oral discovery to be completed by June 21. On July 21, 2011, the day before a scheduled case management conference, defendants filed answers to Locasto's interrogatories. Defendants also complied slowly with Locasto's request for depositions. Locasto initially asked to schedule them for August 2 and 3, 2011 (incidentally, after the deadline). The record shows defendant McKillop deposed on September 6, 2011, and Abdellatif and Longini deposed the next day. Defendant Porter was deposed a month later. Thus, although defendants did not act expeditiously in responding to the trial court's case management order, they did not ignore it either.

¶ 39    The one discovery matter defendants never fulfilled was the deposition of Janet Contursi, a City employee, which Locasto cites as support for the trial court's default order. Locasto asserts Contursi failed to attend depositions scheduled for September 6 and October 7, 2011. Locasto further asserts he offered to depose Contursi on October 21, before the entry of the judgment of default. Although only the City was responsible for ensuring that Contursi be deposed, the default included the individual defendants. While Contursi did not appear on the dates Locasto requested, the record shows the City informed Locasto's attorney that Contursi could be deposed on September 21 or October 12, 18, 21, or 24. Therefore, Locasto shares fault for the inability to take Contursi's deposition.

¶ 40    More significant, though, is Locasto's response to defendants' delays in completing discovery and complying with the trial court's discovery orders. The record shows that Locasto filed a motion for default on July 15, 2011. One week later, on July 22, 2011, the trial court entered a default order "against all defendants for repeated discovery violations" and gave defendants one week to furnish all written discovery. The court then entered continuing default orders on August 11 and September 16, and finally on October 21, 2011, before transferring the case for prove-up.

¶ 41    While the trial court acted appropriately and responsibly in setting deadlines, Locasto went for the jugular, default, in the first instance rather than seek sanctions in proportion to the gravity of the violations. In seeking the sanction of default, Locasto went too far. The trial court should have considered and invoked a less onerous sanction.

¶ 42    Also, before the July 22 order, the trial court never warned defendants that their failure to comply could result in the sanction of "last resort," the sanction that should be reserved until "after all the court's other enforcement powers have failed to advance the litigation." *Shimanovsky*, 181 Ill. 2d at 123. Nor does the record indicate that on July 22, the trial court found the defendants' "actions show a deliberate, contumacious or unwarranted disregard of the court's authority." *Id.*

¶ 43    A proper application of progressive discovery sanctions is illustrated by *Koppel v. Michael*, 374 Ill. App. 3d 998 (2007). In *Koppel*, two months after filing their amended complaint, plaintiffs moved for discovery sanctions on the grounds that defendants had failed to respond to plaintiffs' request for production of documents, as well as answer plaintiffs' first set of interrogatories. *Koppel*, 374 Ill. App. 3d at 1000. In response, the trial court gave defendants one month to answer the interrogatories and produce the requested documents. *Id.* When defendants failed to comply with that order or appear in court, the trial court ordered defendants to pay plaintiffs' attorney fees for the appearance as a sanction. *Id.* The court also " 'advised [defendants] that the nature of the sanctions imposed will become more severe as their non-compliance persists.' " *Id.* A month later, after plaintiffs filed a renewed motion for default judgment for defendants' continuing refusal to comply with the court's discovery orders, the trial court ordered defendants to pay $500 in connection with its previous order as well as the fees plaintiffs incurred in preparing the renewed motion and appearing in court. *Id.* at 1000-01. The court also again informed defendants " 'sanctions will increase with [your] continuing non-compliance with the court's orders.' " *Id.* at 1001. A month later, again, the trial court reminded defendants "sanctions [will] increase until compliance." *Id.* At the next status hearing, after finding that defendants had failed to comply with plaintiffs' discovery requests, the trial court ordered defendants to pay plaintiffs the monetary sanctions. The court also held " 'by virtue of defendants' continuing non-compliance with discovery, defendants are barred from calling any witnesses at trial.' " *Id.* The court informed defendants that the bar "would be vacated if there was compliance." *Id.* Three months later, the trial court entered default judgment in plaintiffs' favor as a sanction "for 'defendants' continuing noncompliance with this court's discovery orders.' " *Id.* Defendants moved to vacate the default judgment, but when neither the defendants nor their attorney appeared at the hearing, the court denied the motion and awarded damages to plaintiffs. *Id.*

¶ 44    In affirming the trial court's default judgment, the appellate court noted "[t]he trial court issued several orders from January 2005 to July 2005, which entered increasing sanctions against defendants to compel discovery. Those orders culminated in the July 11, 2005, entry of a default judgment." *Id*. at 1005. The court further stated defendants " 'have shown that no sanction would encourage them to satisfy their obligations and respect the Court's authority.' " *Id*. at 1007.

¶ 45    Increasingly harsher sanctions were not employed here. One week after plaintiff filed his motion for default under Supreme Court Rule 219(c)(v), the court granted Locasto's request for a default. Further, unlike in *Koppel*, where the trial court warned that failing to comply with its orders would result in increasingly harsh sanctions and followed through on those warnings before entering a default judgment, the trial court here entered a default judgment without first having advised defendants that default was a possibility.

¶ 46    In the absence of any consideration of intermediate sanctions and an advance warning that continued dilatory responses could result in a default, we find the judgment of default unwarranted and remand to the trial court for further proceedings.

¶ 47                                    CONCLUSION

¶ 48    For the above reasons, we reverse the trial court's default judgment and remand for further proceedings consistent with this opinion.

¶ 49    Reversed and remanded.